# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

CYPRUS AMAX MINERALS COMPANY,      :
                                                         :
                                Plaintiff,               :
                                                         :        Case No. 11-CV-252-GKF-PJC
                        v.                               :
                                                         :
CBS CORPORATION,                                         :
CBS OPERATIONS, INC.,                                    :
TCI PACIFIC COMMUNICATIONS, INC. and    :
VIACOM INC.,                                             :
                                                         :
                                Defendants.              :

---

### PLAINTIFF'S MOTION TO COMPEL,
### BRIEF IN SUPPORT
### AND APPLICATION FOR EXPEDITED CONSIDERATION

Respectfully submitted by:

Reid E. Robison, Esquire
OBA No. 7692
Timothy J. Bomhoff, Esquire
OBA No. 13172
*McAfee & Taft A Professional Corporation*
211 N. Robinson, Suite 1000
Two Leadership Square, 10th Floor
Oklahoma City, OK  73102

OF COUNSEL (Admitted *pro hac vice*):
John F. Stoviak, Esquire
Cathleen M. Devlin, Esquire
Christina D. Riggs, Esquire
Amy L. Piccola, Esquire
Patrick M. Hromisin, Esquire
*Saul Ewing LLP*
Centre Square West, 1500 Market Street, 38th Floor
Philadelphia, PA  19102-2186
Telephone: 215-972-1095
Facsimile: 215-972-1921

Dated:  June 18, 2012

# TABLE OF CONTENTS

Motion to Compel ........................................................................................................... 1

Application for Expedited Consideration ....................................................................... 2

Brief in Support of Motion to Compel ........................................................................... 2

I.   INTRODUCTION. ................................................................................................... 2

II.  APPLICABLE LEGAL STANDARD. ................................................................. 5

III.  ARGUMENT. ........................................................................................................ 6

  A.  Defendants' Litany of General Objections Prevents Cyprus Amax From
      Determining What Efforts Defendants Have Undertaken To Locate
      Responsive Information and Documents, What Is Being Produced, and
      What is Being Withheld. ................................................................................... 6

  B.  Defendants' Objections to Any Discovery Relating to Any "NJZ Affiliate"
      Have Improperly Blocked Cyprus Amax from Access to Discoverable
      Information and/or Documents Relevant to Cyprus Amax's Veil-Piercing
      and Alter Ego Claims. ...................................................................................... 9

  C.  Defendants' Objections and Qualified Responses Have Improperly Prevented
      Cyprus Amax from Obtaining Information and/or Documents Relevant to
      Defendants' Corporate Successorship and Indemnification Relationships. .............. 13

IV.  CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614 (D. Colo. 2007) ................5

*Edgar v. Fred Jones Lincoln-Mercury of Oklahoma City, Inc.*, 524 F.2d 162
(10th Cir. 1975) ..................................................................................................................12

*FTC v. Affiliate Strategies, Inc.,* No. 09– 4104– JAR– KGS, 2011 WL 251449
(D. Kan. Jan. 26, 2011) .......................................................................................................5

*Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637 (D. Kan. 2003) ...........................................6

*Jackam v. Hospital Corp. of Am. Mideast, LTD.*, 800 F.2d 1577 (11th Cir. 1986) ........................13

*Monarch Cement Co. v. Lone Star Industries, Inc.*, No. 88-2431-V, 1990 WL 168416
(D. Kan. Oct. 4, 1990) ..........................................................................................................5

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .............................................................5

*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649 (D. Kan. 2004) .............................................6

*Porter v. Farmers Ins. Co., Inc.,* 2011 WL 1566018 (N.D. Okla. Apr. 25, 2011) .........................6

*Smith v. Sentinel Ins. Co.*, No. 10-cv-269-GKF-PJC, 2011 WL 2883433
(N.D. Okla. July 15, 2011) (Cleary, J.) ...........................................................................6, 13

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 26(b)(1) .................................................................3, 5, 6, 13, 17

Federal Rule of Civil Procedure 34 ..................................................................................................5

Federal Rule of Civil Procedure 37 ..................................................................................................1

Local Rule of Civil Procedure 37.1 ..................................................................................................1

Local Rule of Civil Procedure 37.2 ..................................................................................................1

## **Motion to Compel**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rules of Civil Procedure 37.1 and 37.2, Plaintiff Cyprus Minerals Amax Company ("Cyprus Amax"), by and through its undersigned counsel, submits this Motion to Compel seeking an Order compelling responsive interrogatory and requests for admission answers and production of documents from Defendants CBS Operations, Inc. ("CBS Ops.") and TCI Pacific Communications, Inc. ("TCI") (collectively, "Defendants").

Defendants have failed to meet their discovery obligations under the Federal Rules of Civil Procedure by providing evasive non-responses to Cyprus Amax's discovery requests that are rendered virtually meaningless by a myriad of General Objections, specific objections and qualifications. As a result, Cyprus Amax is left unable to discern what efforts, if any, Defendants have undertaken to search for responsive information and documents, what responsive information and/or documents exist and are being produced, and what, if anything, is being withheld from production by Defendants.

In conformity with Local Rule of Civil Procedure 37.1, counsel for Cyprus Amax and Defendants met on June 5, 2012 and conferred in good faith in an effort to resolve the discovery disputes that are the subject of this Motion, but were unable to resolve all outstanding disputes. Thus, Cyprus Amax seeks Court intervention through this Motion. Pursuant to Local Rule of Civil Procedure 37.2(d), a verbatim recitation of each interrogatory, request, answer, response and objection implicated in this Motion is included in a joint submission to be made to the Court by the parties.

For the reasons set forth in the accompanying Brief in Support, Cyprus Amax respectfully requests that its Motion to Compel be granted and that Defendants be required to honor their discovery obligations in the initial corporate issues phase of discovery in this matter.

## Application for Expedited Consideration

Cyprus Amax respectfully requests expedited resolution of this Motion. Cyprus Amax has noticed the depositions of Defendants' corporate designees for July 17, 2012 and July 18, 2012, respectively. The information and documents sought from Defendants in this Motion are directly relevant to Cyprus Amax's theories of liability and, therefore, are relevant to the upcoming depositions. Given this, Cyprus Amax will need time to review any and all additional information and documents produced by Defendants in advance of the approaching depositions. The parties have agreed to an expedited briefing schedule, including initial Motions to Compel to be filed with the Court today, and briefs in opposition to be filed with the Court on or before June 28, 2012. Because the Court's expedited consideration of this Motion will facilitate an orderly and timely discovery process in this matter, Cyprus Amax respectfully requests same.

## Brief in Support of Motion to Compel

## I.      INTRODUCTION.

At the outset of discovery in this matter, the parties jointly proposed, and the Court approved, a phased approach including an initial period of discovery limited to "corporate issues," including Cyprus Amax's claims of Defendants' liability on piercing the corporate veil and "alter ego" theories, and Defendants' corporate successorship and indemnification relationships. [*See* Docket No. 44, Joint Status Report, at VI.C; Docket No. 49, Scheduling Order for Initial Corporate Issues Phase of Discovery]. Cyprus Amax's *own investigation* to date has generated sound evidentiary support for imposing veil-piercing and/or alter ego liability on Defendants, as successors to and/or indemnitors of the successors to The New Jersey Zinc

Company ("NJ Zinc"), for the contamination of Collinsville, Oklahoma arising from the historical zinc smelting operations of the Tulsa Fuel and Manufacturing Company ("TFMC"). But beyond this, pursuant to Federal Rule of Civil Procedure 26(b)(1), Cyprus Amax is plainly entitled to discover *from Defendants* any and all information and/or documents in their possession, custody or control relevant to Cyprus Amax's theories of liability.

Refusing to recognize Cyprus Amax's entitlement to these relevant materials, Defendants have elected to respond to Cyprus Amax's discovery requests, in large measure, with evasive non-responses that are so riddled with General Objections, specific objections and qualifications as to be virtually meaningless. This has left Cyprus Amax unable to discern what efforts, if any, Defendants have undertaken to search for responsive information and documents, what responsive information and/or documents exist and are being produced, and what, if anything, is being withheld from discovery by Defendants.

Further, Defendants have specifically refused to produce discoverable information and/or documents based upon Defendants' General Objection to discovery relating to any "NJZ Affiliate," together with specific objections to this term in multiple discovery responses. [*See* Defendants' Objections and Answers to Plaintiff's First Set of Interrogatories on Corporate Issues, each dated March 1, 2012, at Interrogatory Nos. 7 and 17; Defendants' Objections and Answers to Plaintiff's First Set of Requests for Production of Documents on Corporate Issues, each dated March 1, 2012, at Document Request Nos. 2, 25, 31 and 32]. As detailed herein, evidence of NJ Zinc's interactions with and control over its network of subsidiaries and affiliates, including but not limited to TFMC, is squarely relevant to Cyprus Amax's theories of veil-piercing and alter ego liability. Given this, Defendants' premise for its objections to the term "NJZ Affiliate"-- that Cyprus Amax is not entitled to any information and/or documents

relating to any of NJ Zinc's network of subsidiaries or affiliates other than TFMC and one other related subsidiary, Prime Western Spelter Company ("PWSC") -- is wholly inappropriate and flies in the face of the broad scope of relevancy for discovery purposes under the Federal Rules of Civil Procedure.

Defendants have likewise refused to provide responsive answers to Cyprus Amax's discovery requests concerning Defendants' convoluted corporate web of successorship and indemnification relationships, and exactly where the liabilities of NJ Zinc are situated and how they got there. [*See* Defendants' Objections and Answers to Plaintiff's Second Set of Interrogatories on Corporate Issues, each dated May 18, 2012, at Interrogatory Nos. 22, 25-26; Defendants' Objections and Answers to Plaintiff's First Set of Requests for Production of Documents on Corporate Issues, each dated March 1, 2012, at Requests for Production of Documents Nos. 1-3; Defendants' Objections and Answers to Plaintiff's First Set of Requests for Admissions on Corporate Issues, each dated May 18, 2012, at Requests for Admissions Nos. 4, 6-14]. With regard to Cyprus Amax's Requests for Admissions on these subjects, Defendants have provided responses that are so replete with qualifications as to be non-responsive. Defendants have also refused to produce responsive documents that would shed light on these issues. Because the information and documents sought by Cyprus Amax are relevant and reasonably calculated to lead to the discovery of admissible evidence supporting Cyprus Amax's claims against Defendants, Defendants should be compelled to provide them.

Cyprus Amax requests that Defendants be directed to amend and/or supplement their discovery responses as specified herein, or alternatively as appropriate, that each Defendant affirm, through a non-attorney affidavit or declaration: (a) that a diligent search was performed for all information and/or documents in its possession, custody, and/or control requested in each

of Cyprus Amax's Interrogatories, Requests for Production of Documents and/or Requests for Admissions;[1] (b) what steps were taken in performing this search; (c) that all responsive information and/or documents in that Defendant's possession, custody, and control have been produced to Cyprus Amax; and (d) that no information and/or documents are being withheld from discovery.

## II. APPLICABLE LEGAL STANDARD.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…." Fed. R. Civ. P. 26(b)(1). Importantly for purposes of this Motion, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The U.S. Supreme Court has defined the term "relevant" to encompass "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

---

[1]    Under Federal Rule of Civil Procedure 34, Defendants have a duty to conduct a reasonably diligent search for documents responsive to requests for production. *See FTC v. Affiliate Strategies, Inc.,* No. 09– 4104– JAR– KGS, 2011 WL 251449, at *3 n. 22 (D. Kan. Jan. 26, 2011) (collecting cases); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 626 (D. Colo. 2007) (noting that Rule 34 imposes an affirmative duty to seek information reasonably available through a party's employees, agents, and others subject to its control). *Accord Monarch Cement Co. v. Lone Star Industries, Inc.*, No. 88-2431-V, 1990 WL 168416 (D. Kan. Oct. 4, 1990) (directing defendant to make an additional search, and to either produce all documents requested or submit the affidavit of a person having knowledge describing in detail the search made for such documents on or before a date certain); *see also FTC*, 2011 WL 251449, at *3 (ordering party "to produce all documents responsive to [certain requests]. … If no further documents exist, [the party] shall so indicate expressly in a supplemental response and also confirm it has conducted a reasonable search of the records in its possession, custody, or control").

Error! Unknown document property name. 06/18/2012

As this Court has specifically recognized, "relevancy" for discovery purposes is broadly construed, and "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *See Smith v. Sentinel Ins. Co.*, No. 10-cv-269-GKF-PJC, 2011 WL 2883433, at *1 (N.D. Okla. July 15, 2011) (Cleary, J.) (citing *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004)). "A discovery request should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Smith,* 2011 WL 2883433, at *1 (citing *Owens*, 221 F.R.D. at 652 and *Porter v. Farmers Ins. Co., Inc.,* 2011 WL 1566018 at *1 (N.D. Okla. Apr. 25, 2011)). Accordingly, "when the requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Smith,* 2011 WL 2883433, at *2 (citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) and *Porter*, 2011 WL 1566018, at *1).

## III.     ARGUMENT.

### A.     Defendants' Litany of General Objections Prevents Cyprus Amax From Determining What Efforts Defendants Have Undertaken To Locate Responsive Information and Documents, What Is Being Produced, and What is Being Withheld.

Defendants' responses to Cyprus Amax's discovery requests are prefaced by an extensive litany of "General Objections" that are not tied to any particular discovery request.[2] As a result,

---

[2]     Both Defendants TCI and CBS Ops. lodged fourteen (14) separate General Objections in response to Plaintiff's First Set of Interrogatories on Corporate Issues, and incorporated these General Objections by reference into their responses to Plaintiff's First Set of Requests for Production of Documents on Corporate Issues.  Similarly, both Defendants lodged thirteen (13) separate General Objections in response to Plaintiff's Second Set of

Cyprus Amax is left to guess which General Objections might apply to a particular discovery request, and is left with no understanding of what efforts, if any, Defendants undertook to search for information and documents responsive to Cyprus Amax's individual discovery requests; what is being produced in response to a given request, and what, if anything, Defendants might be withholding from discovery based upon their General Objections.

As this Court has noted, "[t]he Federal Rules of Civil Procedure require that the grounds for discovery objections be stated with specificity. . . . [and] general objections often fail this test." *See* Judge Paul J. Cleary, *Some Thoughts on Discovery and Legal Writing*, The Oklahoma Bar Journal, Vol. 82, No. 33, at 2924 (Dec. 10, 2011). Not only is a "mere recitation of the familiar litany" of objections insufficient to meet one's burden under the Federal Rules of Civil Procedure, *id.* at n.6, such vague objections cause even further complication when, as here, the responding party "both objects *and* responds to the discovery request without defining the line where the objection ends and the response begins" and "fails to indicate that [the responding party] has undertaken a sufficient search to determine if there are *any* documents responsive" to the requests. *See id.* at 2926.

That is precisely what Defendants have done here. As drafted, Defendants' General Objections apply to all of Cyprus Amax's 29 Interrogatories, 48 Requests for Production of Documents and 14 Requests for Admissions. Thus, Defendants have blurred the line between their objections and their responses, leaving Cyprus Amax with no way to determine what efforts, if any, Defendants undertook to identify *any* information and/or documents responsive to

---

Interrogatories on Corporate Issues and Requests for Production of Documents on Corporate Issues, as well as in response to Plaintiff's First Set of Requests for Admissions.

Cyprus Amax's requests. In so doing, Defendants have failed to comply with their discovery obligations under the Federal Rules of Civil Procedure.

In an effort to address this issue following the parties' meet and confer session on June 5, 2012, Cyprus Amax requested by email that Defendants confirm that they are "not withholding from disclosure in discovery any information and/or documents on the basis of Defendants' extensive sets of General Objections." [*See* Plaintiff's Exhibit A]. While Defendants confirmed same in a subsequent email [*see* Plaintiff's Exhibit B], they have not amended their discovery responses in any manner to reflect this representation.

In any event, Cyprus Amax remains skeptical as to Defendants' representation in this regard, and for good reason. Specifically, the crux of Defendants' argument in opposition to Cyprus Amax's veil-piercing and alter ego claims is that TFMC was owned and operated wholly independently of NJ Zinc for a period of twenty years from 1906 to 1926. Cyprus Amax's Requests for Production for Documents Nos. 6, 8, 16-18 and 42-45 specifically sought production of various corporate and financial records, meeting minutes, tax returns and other business records of any kind of TFMC, PWSC and NJ Zinc.[3] In response, Defendants have managed to produce *a grand total of only eight (8) documents specific to TFMC*. These include: (1) the Charter of TFMC dated June 20, 1906; (2) an Application for Charter filed on behalf of TFMC dated June 25, 1906; (3) a Receipt of Charter fee for the Charter of TFMC dated July 19, 1906; (4) a Copy of a Resolution of the By-Laws of TFMC dated July 15, 1908; (5) the Minutes of a Special Meeting of the Stockholders of TFMC dated September 12, 1912; (6) a Financial Statement to the Stockholders of TFMC dated January 12, 1924; (7) a Certificate of Withdrawal

---

[3] *See* Defendants' Objections and Answers to Plaintiff's First and Second Sets of Requests for Production of Documents on Corporate Issues, dated March 1, 2012 and May 18, 2012, respectively.

**Error! Unknown document property name.** 06/18/2012

from the State of Oklahoma filed on behalf of TFMC dated December 28, 1926; and (8) a

Certificate of Dissolution of TFMC effective as of December 30, 1926.

Prior to producing these materials, Defendants' counsel made reference to "hundreds of

boxes" of potentially responsive documents in Defendants' possession, custody and control.

Given what appears to be a very incomplete document production on Defendants' part, Cyprus

Amax seeks specific information about the nature and extent of the efforts undertaken by

Defendants to locate information and/or documents responsive to Cyprus Amax's discovery

requests, including the scope of the "relevancy" lens used in their search and the fruits of such

efforts. Specifically, Cyprus Amax requests that the Court compel each Defendant to state,

through a non-attorney affidavit or declaration: (a) that a diligent search was performed for all

information and/or documents in its possession, custody, and/or control requested in each of

Cyprus Amax's Interrogatories, Requests for Production of Documents and/or Requests for

Admissions; (b) what steps were taken in performing this search; (c) that all responsive

information and/or documents in that Defendant's possession, custody, and control have been

produced to Cyprus Amax; and (d) that no information and/or documents are being withheld

from discovery. Alternatively, Cyprus Amax requests that Defendants be directed to amend or

supplement their discovery responses to reflect same.

> **B.** **Defendants' Objections to Any Discovery Relating to Any "NJZ Affiliate" Have Improperly Blocked Cyprus Amax from Access to Discoverable Information and/or Documents Relevant to Cyprus Amax's Veil-Piercing and Alter Ego Claims.**

Cyprus Amax's theories of liability in this matter include claims that NJ Zinc dominated

and controlled TFMC to such an extent that NJ Zinc must be held responsible for the liabilities

of TFMC, and that in turn, Defendants, as the successors to and/or indemnitors of the successors

to NJ Zinc, must be held responsible for the liabilities of NJ Zinc. With regard to the issue of NJ

Zinc's interactions with TFMC, it has become increasingly apparent from the body of historical information and documents uncovered by Cyprus Amax to date that the NJ Zinc family of companies included a network of related and affiliated entities, including but not limited to TFMC, that functioned *not* as independently operated subsidiaries, but rather as operating divisions closely controlled and dominated by NJ Zinc. Articles historically appearing in NJ Zinc's own publication, *Zinc* Magazine, firmly support this characterization of the "general scheme of operation of the New Jersey Zinc Company and its subsidiary companies," specifically including TFMC, going so far as to observe that "the operations of the parent Company and those of its subsidiaries are so interwoven that they are to a large extent inter-dependent." [Docket No. 2, Complaint ¶ 32; *see also* Plaintiff's Exhibit C]. Cyprus Amax's Complaint details a variety of additional NJ Zinc publications and records, among other historical sources, supporting Cyprus Amax's allegations that NJ Zinc dominated and pervasively controlled the operations of its network of purported subsidiaries and affiliates, which essentially constituted dummy or sham corporations that were in reality being operated in all material respects by NJ Zinc. [*See* Docket No. 2, Complaint ¶¶ 27-43; *see also* Plaintiff's Exhibit D ("[t]he New Jersey Zinc Company is the parent company and its lines of organization and routines carry through all the subsidiaries. The reasons for the existence of those subsidiaries will be found in the various State laws governing corporations. I want to impress upon you that there is no subterfuge here – we are not hiding behind some other name with ulterior motives.")]

Given these theories of liability, evidence of NJ Zinc's interactions with and control over its network of subsidiaries and affiliates, including TFMC -- but importantly, not limited to TFMC -- is plainly relevant to Cyprus Amax's theories of veil-piercing and alter ego liability.

-10-

Nevertheless, Defendants have objected to the term "NJZ Affiliate," and to any discovery relating to "NJZ Affiliates," on the following grounds:

> Defendant objects to Plaintiff's definition of "NJZ Affiliate" and Plaintiff's requests for documents and information relating thereto because such requests are overly broad and unduly burdensome. Plaintiff defines "NJZ Affiliate" to include "any corporate entity affiliated in any way with NJZ or owned to any extent by any individual who was also an officer or director of NJZ at the time of ownership." *See* Plaintiff's Discovery Requests at p. 3. Plaintiff does not define the term "affiliated" so the term "NJZ Affiliate" may reasonably be read to include an untold number of corporate entities who simply provided services to, purchased services or products from, or otherwise conducted business with NJZ. Consequently, Defendant objects to Plaintiff's definition of "NJZ Affiliate" because there is no reasonable way for Defendant to ascertain the myriad identities of "any corporate entity affiliated in any way with NJZ."

> Defendant objects to the term "NJZ Affiliate" because it does not contain any time limit and is, therefore, overly broad and unduly burdensome. Without waiving this objection, Defendant understands the time limits identified in Plaintiff's Instruction No. 17 to likewise apply to the definition of "NJZ Affiliate" because the term "NJZ" is incorporated into the definition of "NJZ Affiliate." Stated otherwise, Defendant understands "NJZ Affiliate" to include "any corporate entity affiliated in any way with NJZ (from 1892 to 1943) or owned to any extent by any individual who was also an officer or director of NJZ (from 1892 to 1943) at the time of ownership." Defendant further objects to Plaintiff's definition of "NJZ Affiliate" as being overly broad and unduly burdensome because there is no reasonable way for Defendant to know what corporate entities may have been "owned to any extent" by anyone who was also an officer or director of NJZ at the time of ownership – i.e., 69-120 years ago. What any individual officer or director may have privately held in terms of ownership interests in other corporate entities is a matter of that individual's private holdings and therefore, not likely to have been reported as part of any official records associated with NJZ.

> Subject to, and without waiver of, the foregoing objection, Defendant states that, if its review of documents identifying any officer or director of NJZ should happen to identify that individual's stock ownership of NJZ or any company alleged to be a subsidiary of NJZ (from 1892 to 1943), Defendant will, as a courtesy, produce such documents to Plaintiff without conceding their relevance to the issues presently subject to the Initial Corporate Issues Phase of Discovery.

[*See, e.g.,* General Objection No. 12, Defendants' Objections and Answers to Plaintiff's First Set of Interrogatories on Corporate Issues, each dated March 1, 2012].

In an effort to address the parties' dispute on this issue, Cyprus Amax has offered multiple refinements to Defendants of the definition of the term "NJZ Affiliate." Defendants have rejected each such effort. In its most recent iteration, Cyprus Amax proposed the following definition: "NJZ Affiliate" includes any of the following, for the time period of 1898-1932, inclusive:

> Any subsidiary of NJZ;
>
> Any entity in which Stephen Palmer and/or Edgar Palmer, individually or collectively, owned and/or controlled a majority of the outstanding stock; and
>
> The Tulsa Fuel & Manufacturing Company, Prime Western Spelter Company, Empire Zinc Company, Empire Zinc Company (Mo.), Mineral Point Zinc Company, New Jersey Zinc Co. (of Pa.), The Bertha Mineral Company, The Palmer Land Company, Chestnut Ridge Railway Company, Smith Valley Realty Corporation, Master Painters' Supply Company and The New Jersey Zinc Sales Company.

[*See* Plaintiff's Exhibit B]. Given Defendants' refusals to accept Cyprus Amax's repeated, good faith attempts to narrow the definition of "NJZ Affiliate," it has become apparent that Defendants' objection relates not to the scope of the definition, but to the relevance of any discovery at all relating to any "NJZ Affiliate," no matter how narrowly defined.

Defendants' objection should be overruled and Cyprus Amax should be entitled to discovery from Defendants about the relationship between NJ Zinc and non-TFMC subsidiaries and affiliates within NJ Zinc's network. Where, as here, allegations have been made and facts have been adduced substantiating that an 'alter ego' relationship may exist, courts have readily permitted the pursuit of further discovery into veil-piercing issues. *See Edgar v. Fred Jones Lincoln-Mercury of Oklahoma City, Inc.*, 524 F.2d 162, 167 (10th Cir. 1975) (allowing pursuit of discovery seeking to establish the existence of facts sufficient to justify piercing the corporate

-12-

veil); *Jackam v. Hospital Corp. of Am. Mideast, LTD.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986) (allowing party to pursue discovery in an effort to establish existence of facts sufficient to justify piercing the corporate veil).

Given the existence of historical documentation evidencing NJ Zinc's domination and control over its entire network of subsidiaries and affiliates, requests by Cyprus Amax seeking further information and/or documents relating to NJ Zinc's relationship with these entities in Interrogatory Nos. 7 and 17 and Requests for Production of Documents Nos. 2, 25, 31 and 32 are relevant and reasonably calculated to lead to the discovery of admissible evidence on Cyprus Amax's veil-piercing and alter ego theories. Because Defendants cannot establish that the information and/or documents sought "can have no possible bearing" on the claims at issue here, Cyprus Amax's Motion to Compel is properly granted. *See Smith,* 2011 WL 2883433, at *1 (holding that where the "requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1).")

**C.      Defendants' Objections and Qualified Responses Have Improperly Prevented Cyprus Amax from Obtaining Information and/or Documents Relevant to Defendants' Corporate Successorship and Indemnification Relationships.**

Cyprus Amax's claims against Defendant TCI in this matter arise from TCI's status as a successor by merger to NJ Zinc. Cyprus Amax's claims against Defendant CBS Ops. in this matter arise from CBS Ops.' status as both an indemnitor of TCI and as a holder of NJ Zinc liabilities. Accordingly, Cyprus Amax's discovery requests include several inquiries seeking information and/or documents to illuminate the nature and extent of Defendants' indemnification relationships and transfers of NJ Zinc liabilities between and among each other. [*See* Defendants' Objections and Answers to Plaintiff's Second Set of Interrogatories on Corporate

-13-

Issues, each dated May 18, 2012, at Interrogatory Nos. 22, 25-26; Defendants' Objections and Answers to Plaintiff's First Set of Requests for Production of Documents on Corporate Issues, each dated March 1, 2012, at Requests for Production of Documents Nos. 1-3; Defendants' Objections and Answers to Plaintiff's First Set of Requests for Admissions on Corporate Issues, each dated May 18, 2012, at Requests for Admissions Nos. 4, 6-14]. As examples, Cyprus Amax has sought an admission from TCI that its status as a successor to NJ Zinc makes it responsible for the liabilities of NJ Zinc with regard to TFMC and its historical zinc smelting operations, to the extent that any such liabilities are determined to exist. [*See* Defendants' Objections and Answers to Plaintiff's First Set of Requests for Admissions on Corporate Issues, each dated May 18, 2012, at Request for Admission No. 4]. Cyprus Amax has also sought admissions from Defendant CBS Ops. as to the scope of its contractual indemnification obligation to TCI. [*See id.* at Request for Admission Nos. 6, 14].

More specifically among other things, Cyprus Amax has sought information from Defendants regarding the "Non-Cable Liabilities" expressly assumed by Defendant CBS Ops. as part as of a July 24, 1995 Indemnification Agreement to understand whether such liabilities include NJ Zinc liabilities.[4] Based on documents produced to date by Defendants, which have not included any documents identifying the "Pre-Closing Specific Liabilities," it appears that CBS Ops. assumed all liabilities of Old VII [Viacom International, Inc. (now known as TCI)], which may have included liabilities of NJ Zinc -- such that CBS Ops. may be a successor to the liabilities of NJ Zinc or holder of certain of those liabilities. Article II, Section 2.1 of the Implementation Agreement, entitled "Conveyance of Assets and Assumption of Liabilities;

---

[4]     *See* Plaintiff's Exhibit E, relevant excerpts of Implementation Agreement by and between Viacom International, Inc. (now known as TCI) and Viacom International Services, Inc. (now known CBS Ops.) dated as of July 24, 1995.

Transfers to New VII, Recapitalization, states in subpart (a), among other things, that: "New VII [Viacom International Services, Inc., a Delaware Corporation, now known as CBS Operations] shall execute and deliver the Bill of Sale and *thereby assume* and agree to perform when due in accordance with their terms *the Non-Cable Liabilities of Old VII* [Viacom International, Inc., a Delaware Corporation] and the Cable Division Subsidiaries (the 'Assumption of Liabilities')." (emphasis added). The Implementation Agreement defines "Non-Cable Liabilities" as follows: "'Non-Cable Liabilities' means all obligations and liabilities of Old VII and its Subsidiaries other than (x) those constituting Cable Liabilities and (y) those arising from or with respect to the operation of the business of Old VII and the Cable Division Subsidiaries after the Exchange Date (other than Pre-Closing Specified Liabilities . . .)." Thus, the entity now known as CBS Ops. assumed the "Non-Cable Liabilities" of Old VII prior to TCI Communications, Inc.'s purchase of all Class B shares in Viacom International, Inc. on July 31, 1996. Significantly, however, CBS Ops. has failed to provide any listing or schedule of liabilities identifying the "Non-Cable Liabilities" assumed by CBS Ops. So that Cyprus Amax can untangle this convoluted corporate web, Cyprus Amax is entitled to discovery illuminating what exactly constituted the "Non-Cable Liabilities."

Finally, Cyprus Amax has made document requests to Defendant CBS Ops. in order to clarify the basis for its apparent acceptance of responsibility for environmental investigation and/or cleanups at certain other environmental sites on behalf of NJ Zinc, suggesting potential successor liability separate and apart from indemnitor liability. [*See* Defendants' Objections and Answers to Plaintiff's First Set of Requests for Production of Documents on Corporate Issues, each dated March 1, 2012, at Requests for Production of Documents Nos. 1, 2, 3].

With regard to Cyprus Amax's Requests for Admissions on these subjects, Defendants

have provided responses that are so riddled with qualifications as to be rendered meaningless.  In particular, TCI's response to Request for Admission No. 4 refuses to divulge TCI's position as to whether its status as a successor to NJ Zinc makes it responsible for the liabilities of NJ Zinc with regard to TFMC, if such liabilities are determined to exist.  [*See* Defendant TCI's Objections and Answers to Plaintiff's First Set of Admissions on Corporate Issues, dated May 18, 2012, at Request for Admission No. 4].  In an effort to clarify this ambiguity with regard to the import of TCI's status as a successor to NJ Zinc, following the parties' meet and confer session on June 5, 2012, Cyprus Amax requested by email that Defendants amend their response.  Defendants have refused to do so.  [*See* Plaintiff's Exhibits A and B].

Further, with regard to the responses provided by CBS Ops. to Cyprus Amax's Requests for Admissions concerning the scope of its indemnification obligation to TCI, CBS Ops. has been as clear as mud.  Specifically, CBS Ops. has stated only that CBS Ops. "admits that it has certain contractual indemnity obligations to TCI pursuant to the terms and conditions set forth in the Implementation Agreement," but CBS Ops. "denies that it is responsible for any contingent, hypothetical, and/or undefined NJZ liabilities because there may be circumstances demonstrating that a particular NJZ liability rests with another entity."  [*See* Defendant CBS Ops.' Objections and Answers to Plaintiff's First Set of Requests for Admissions on Corporate Issues, dated May 18, 2012, at Request for Admission No. 6].

Finally, Defendant CBS Ops. has objected and refused to produce any documents whatsoever relating to certain other sites, which Cyprus Amax has requested in order to understand CBS Ops.' acceptance of responsibility for NJ Zinc operations at these sites, and whether it may demonstrate a basis for successor liability on the part of CBS Ops as to TFMC.  [*See* Defendants' Objections and Answers to Plaintiff's First Set of Requests for Production of

Documents on Corporate Issues, each dated March 1, 2012, at Requests for Production of Documents Nos. 1, 2, 3]. The parties have been engaged in a protracted dialogue on this issue both before and after the June 5, 2012 meet and confer session, with Cyprus Amax narrowing its requests to CBS Ops. to four specific sites -- the Cleveland Mill, Eagle Mine, DePue and Palmerton Superfund sites -- but CBS Ops. has maintained its objections and refused to produce any documents concerning these sites.

Pursuant to Fed. R. Civ. P. 26(b)(1), Cyprus Amax is entitled to discover from Defendants any and all information and/or documents in their possession, custody or control relevant to Defendants' successorship and indemnification relationships implicated by Cyprus Amax's claims in this matter. Defendants' qualified non-responses to Requests for Admissions and their objections to Requests for Production of Documents in this regard are improper. Because the information and documents sought by Cyprus Amax are relevant and reasonably calculated to lead to the discovery of admissible evidence supporting Cyprus Amax's claims, Defendants should be compelled to (a) amend their responses to Cyprus Amax's Requests for Admissions to provide meaningful, unqualified responses; and (b) produce all documents in their possession, custody and control pertaining to the Cleveland Mill, Eagle Mine, DePue and Palmerton Superfund sites that shed light on the basis for CBS Ops.' assumption of responsibility for liabilities of NJ Zinc at these sites.

## IV. CONCLUSION.

For each of the foregoing reasons, Plaintiff Cyprus Amax Minerals Company respectfully requests that the Court grant Cyprus Amax's Motion to Compel and Application for Expedited Consideration of same.

/s/ Reid E. Robinson
Reid E. Robison, Esquire
OBA No. 7692
Timothy J. Bomhoff, Esquire
OBA No. 13172
*McAfee & Taft A Professional Corporation*
211 N. Robinson, Suite 1000
Two Leadership Square, 10th Floor
Oklahoma City, OK 73102

OF COUNSEL (Admitted *pro hac vice*):
John F. Stoviak, Esquire
Cathleen M. Devlin, Esquire
Christina D. Riggs, Esquire
Amy L. Piccola, Esquire
Patrick M. Hromisin, Esquire
*Saul Ewing LLP*
Centre Square West, 1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Telephone: 215-972-1095

Dated: June 18, 2012     Facsimile: 215-972-1921

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff Cyprus Amax Minerals Company's Motion to Compel, Brief in Support, and Application for Expedited Consideration was served on this date via the Court's ECF Filing System upon the following counsel of record:

Mark D. Coldiron, Esquire
Paula M. Jantzen, Esquire
Ryan Whaley Coldiron Shandy PLLC
900 Robinson Renaissance
119 North Robinson Avenue
Oklahoma City, OK 73102
*mcoldiron@ryanwhaley.com*
*pjantzen@ryanwhaley.com*

Paul D. Steinman, Esquire
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
US Steel Tower
Pittsburgh, PA 15219
*psteinman@eckertseamans.com*

/s/ Reid E. Robinson

Dated: June 18, 2012