IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CYPRUS AMAX MINERALS COMPANY, )
)
        Plaintiff, )
) Case No. 11-CV-252-GKF-PJC
v. )
)
TCI PACIFIC COMMUNICATIONS, INC., )
and CBS OPERATIONS, INC.,[1] )
)
        Defendants. )

## OPINION AND ORDER

Before the court is the Motion for Choice of Law Determination [Dkt. #53] of defendants TCI Pacific Communications, Inc. ("TCI"), and CBS Operations, Inc. ("CBS"). Defendants seek a finding that Kansas law or federal common law should be applied to determine whether plaintiff Cyprus Amax Minerals Company ("Cyprus") can pierce the corporate shield and hold them liable for environmental cleanup costs it has incurred at two defunct zinc smelting facilities located south of Collinsville, Oklahoma. Plaintiff argues Oklahoma law should apply to the corporate shield-piercing issue.[2]

---

[1] Viacom Inc. and CBS Corporation were initially named as defendants in this action. Stipulations of voluntary dismissal without prejudice were filed as to these parties on March 5, 2012 [Dkt. #59] and April 2, 2012 [Dkt. #63].

[2] Plaintiff also argues the pending motion is premature and resolution of the choice of law issue should be deferred to summary judgment. The court disagrees. Plaintiff's theory of liability is complex and will require at least three levels of inquiry: (1) whether the corporate veil should be lifted so as to impose liability on shareholders of Tulsa Fuel and Manufacturing Company ("TFMC"), the owner of the TFM zinc smelter in Collinsville; (2) whether New Jersey Zinc Company ("NJ Zinc") was an owner or shareholder of TFMC; and (3) whether defendant assumed the liabilities of NJZ. Resolution of the corporate shield issue could obviate the need for discovery and motion practice on the remaining levels of inquiry.

## I. Facts and Procedural History

This case arises from the discovery of environmental contamination in Collinsville, Oklahoma, and surrounding areas. The contamination is alleged to be attributable to the former operations of two defunct zinc smelting facilities located south of Collinsville. [Dkt. #2, Complaint, ¶1]. Plaintiff alleges the court has federal question jurisdiction of the case pursuant to 28 U.S.C. § 1331, based on claims asserted under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), and supplemental jurisdiction of plaintiff's common law claim for unjust enrichment pursuant to 18 U.S.C. § 1367(a). [*Id.,* ¶7]. Plaintiff is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Phoenix, Arizona. [*Id.,* ¶2]. Defendant CBS is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York. [*Id.,* ¶4]. Defendant TCI is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Colorado. [*Id.,* ¶5].

Plaintiff is the successor to the corporate parent of a company that operated one of the former smelting facilities. [*Id.*, ¶1]. It is cooperating with state and federal authorities to investigate and remediate the alleged environmental contamination, and has incurred and will continue to incur substantial costs in doing so. [*Id.*]. Plaintiff asserts seven claims for recovery of cleanup costs and declaratory judgment pursuant to CERCLA. [*Id.,* ¶¶81-140]. Additionally it asserts a common law claim for unjust enrichment against defendants. [*Id.,* ¶¶141-146].

Two former zinc smelting facilities—the Tulsa Fuel and Manufacturing Zinc Smelter ("TFM Smelter") and the Bartlesville Zinc Smelter ("BZ Smelter")—are located approximately one mile south of Collinsville. [*Id.,* ¶11]. Plaintiff alleges that between 1911 and 1925, the TFM

Smelter was nominally owned and/or operated by TFMC, a corporation organized under the laws of the State of Kansas in 1906 and later dissolved in 1926 [*Id.,* ¶¶13, 42]. It asserts that at all relevant times, TFMC was dominated and controlled by, or was operated for the benefit of, and was the "alter ego" of, the New Jersey Zinc Company ("NJ Zinc") [*Id.,* ¶14]. Plaintiff alleges defendants TCI and CBS are the successors to the liabilities of NJ Zinc. [*Id.,* ¶¶15, 94]. It asks the court to "pierce the corporate veil" of TFMC, determine that NJ Zinc is responsible for the liabilities of TFMC, and impose that liability on TCI and CBS. [*Id.,* ¶¶28, 41, 93-95].

Defendants seek a determination of which state's law governs the alter ego/corporate shield-piercing issue.

## II. Analysis

### A. Whether There is a Conflict of Laws

"The first step in any choice of law analysis is to determine whether there is a conflict of laws." *Canal Insurance Co. v. Montello, Inc.,* 522 F.Supp.2d 1177, 1181 (N.D. Okla. 2011). The law of Oklahoma, where this action was brought; the law of Kansas, where TFMC was incorporated; and federal common law all potentially apply to plaintiff's veil-piercing claims. If there is no conflict between the laws of the three forums, then the court will apply Oklahoma law. If there is a conflict between Oklahoma and Kansas law or Oklahoma and federal common law, the court must determine which law applies. *Id.*

Under Oklahoma law, "[o]ne corporation may be held liable for the acts of another under the theory of alter-ego liability if (1) the separate existence is a design or scheme to perpetuate a fraud *or* (2) one corporation is merely an instrumentality or agent of the other." *Gilbert v. Sec. Fin. Corp. of Okla.,* 152 P.3d 165, 175 (Okla. 2006) (citing *Gibson Prod. Co., Inc. of Tulsa v.*

*Murphy,* 100 P.2d 453, 458 (Okla. 1940)) (emphasis added).[3]  As the court in *Canal Insurance* pointed out, Oklahoma's test for veil-piercing is stated in the disjunctive.  822 F.Supp.2d at 1181-82.  Thus, liability may be imposed if plaintiff proves either a design to perpetuate a fraud *or* that one corporation was a mere instrumentality of the other.

In contrast, the Kansas veil-piercing test requires a showing of *both* factors.  Specifically, the Kansas Supreme Court has stated:

> The ultimate test for imposing alter ego status is whether, from all the facts and circumstances, it is apparent that the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business assets are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties.  *In addition to the factors used to determine a corporate alter ego status, a plaintiff must show that allowing the legal fiction of a separate corporate structure would result in injustice toward plaintiff.*

*Doughty v. CSX Transp., Inc.*, 905 P.2d 106, 111 (Kan. 1995) (emphasis added).  In short, the requirements for establishing alter ego liability are more onerous under Kansas law than under Oklahoma law.[4]

Oklahoma corporate veil-piercing law also conflicts with federal common law.  In *United States v. Bestfoods,* 524 U.S. 51, 55 (1998), the Supreme Court held that a defendant parent corporation could be indirectly liable under CERCLA for its subsidiary's actions if the plaintiff is entitled to pierce the corporate veil between the parent and the subsidiary.  However, the court—noting the issue had not been raised in the appeal—declined to determine whether courts

---

[3] The court in *Gilbert* listed nine factors courts may consider in determining whether to hold one corporation liable for the acts of another.  152 P.3d at 175.  The factors "hinge primarily on control." *Id.*

[4] In *Canal Insurance,* U.S. District Judge James H. Payne addressed a similar disparity between Oklahoma corporate veil-piercing law and the law of Indiana, which—like Kansas—requires a showing of both fraud or injustice *and* that one corporation was an instrumentality of the other.  822 F.Supp.2d at 1181-82.

should borrow state law or apply a federal common law to resolve corporate veil piercing issues. *Id.* at 64, n. 9.

The Tenth Circuit has not addressed the question of alter ego liability in the context of CERCLA. However, in *National Labor Relations Board v. Greater Kansas City Roofing,* 2 Fed.3d 1047 (10th Cir. 1993), it articulated the federal common law standard for veil piercing when exercising federal question jurisdiction within the context of a federal labor dispute. The court stated:

> [W]e conclude that the federal common law doctrine of piercing the corporate veil under an alter ego theory can best be described by the following two-part test: (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations.
>
> * * *
>
> It should be emphasized that the showing of inequity necessary to satisfy the second prong must flow from the misuse of the corporate form. The mere fact that a corporation commits an unfair labor practice, or breaches a contract, or commits a tort, does not mean that individual shareholders of the corporation should personally be liable. To the contrary, the corporate form of doing business is typically selected precisely so that the individual shareholders will not be liable. It is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced.

*Id.* at 1052-53 (emphasis in original) (quotations and citations omitted). This standard—like the Kansas standard, requires a showing of both control and resulting injustice or fraud.

Because the burden for piercing the corporate veil is more onerous under Kansas and federal common law than under Oklahoma law, the court must resolve the issue of which law applies. *See Canal,* 822 F.Supp.2d at 1183.

**B. Should Oklahoma or Federal Common Law Choice of Law Principles Be Applied?**

In diversity actions, choice of law inquiries are governed by the laws of the forum state. *Elec. Distrib. Inc. v. SFR, Inc.,* 166 F.3d 1074, 1083 (10th Cir. 1999). In the absence of controlling precedent in the forum state, the federal court sitting in diversity must nonetheless decide issues as it believes the state court would decide them. *Tomlinson v. Combined Underwriters Life Ins. Co.,* 2009 WL 2601940, at *1 (N.D. Okla. 2009) (unpublished) (citing *Wammock v. Celotex Corp.,* 835 F.2d 818, 820 (11th Cir. 1988)). In *Tomlinson,* District Judge Terence Kern noted Oklahoma courts had not yet addressed the issue of what state's law to apply in determining whether to pierce the corporate veil, and as a result, the issue must be determined based on how the court believes the Oklahoma Supreme Court would rule. *Id.* The court looked to the Restatement (Second) of Conflicts of Law to answer the question. *Id.* at *2; *accord Canal,* 822 F.Supp.2d at 1183-84.

Where—as in this case—federal question jurisdiction is invoked, federal courts generally apply federal common law principles to resolve choice of law disputes. *See, e.g., National Fair Housing Alliance, Inc. v. Prudential Ins. Co. of America,* 208 F.Supp.2d 46, 62 (D.D.C. 2002). "[C]ircuit courts have concluded that a federal common law choice-of-law analysis should be conducted when the issue is a federal question, and that in the absence of guidance from Congress, courts have relied upon the Restatement (Second) of Conflicts of the Law for the content of federal common law." *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 809 (5th Cir. 2009); *accord Edelmann v. Chase Manhattan Bank, N.A.,* 861 F.2d 1291, 1294-95 (1st Cir. 1988); *In re Kaiser Steel Corp.,* 87 B.R. 154, 158 (Bkrtcy.D.Colo. 1988); and *San Lucio, S.R.L. v. Import & Storage Services, LLC,* 2009 WL 101981, at *3, n. 3 (D.N.J. 2009).

Thus regardless of whether the court applies Oklahoma or federal common law principles of choice of law, the court must look to the Restatement (Second) of Conflicts of Law to resolve this issue.

### C. Under the Restatement (Second), What Law Governs Veil Piercing?

The Restatement (Second) of Conflicts of Law § 307 states:

> The local law of the state of incorporation will be applied to determine the existenceand extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts.

Restatement (Second) of Conflicts of Laws § 307 (1971). In both *Tomlinson* and *Canal Insurance,* the court concluded § 307 controlled the choice of law determination for issues involving corporate veil piercing. *Tomlinson* 2009 WL 2601940, at *2 (collecting cases); *Canal Insurance,* 822 Fed.Supp.2d at 1184. The *Tomlinson* court stated:

> Although, as noted above, Oklahoma courts have not addressed application of § 307 in the veil-piercing context, Oklahoma courts have previously followed other provisions of the Restatement (Second) of Conflicts of Laws. Because Oklahoma courts have followed the Restatement (Second) of Conflicts of Laws in other circumstances, Defendants argue that the Oklahoma Supreme Court would apply § 307 in this case and find that the law of the state of incorporation applies to derivative liability claims. Plaintiff has cited no cases indicating that the Oklahoma Supreme Court would disregard § 307 in determining which state law to apply. Accordingly, based on citation to the Restatement (Second) of Conflicts of Laws in other circumstances, the Court finds that the Oklahoma Supreme Court would follow § 307 in holding that the state of incorporation's law applies to issues of piercing the corporate veil.
>
> Further supporting the Court's conclusion is the fact that the majority of jurisdictions addressing this question have also applied the law of the state of incorporation to veil-piercing issues. The Court is accordingly persuaded that the Oklahoma Supreme Court would follow § 307 and the weight of authority holding that the law of the state of incorporation determines whether a corporate veil may be pierced.

*Id.,* at **2-3 (citations and quotations omitted).

This court, following federal common law conflict principles, and looking to § 307 of the Restatement (Second) of Conflict of Laws, similarly concludes the veil-piercing analysis must be conducted according to the law of Kansas, the state of incorporation of TFMC. As previously noted, Kansas law requires a showing of two factors: (1) based on "all the facts and circumstances, it is apparent that the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business assets are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties;" and (2) "that allowing the legal fiction of a separate corporate structure would result in injustice toward plaintiff." *Doughty,* 905 P.2d at 111.

Plaintiff argues that under § 302 of the Restatement (Second) of Conflict of Laws, Oklahoma law should be applied to the veil-piercing analysis. Section 302 states:

> (1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301,[5] are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under principles stated in § 6.
>
> (2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws, § 302. In arguing for application of Oklahoma law, plaintiff asserts Oklahoma has a far more significant relationship to this matter than does Kansas because the contamination at issue is located in Oklahoma. [Dkt. #56 at 12-13].[6]

---

[5] Under § 301, rights and liabilities of a corporation with respect to a third person (a person other than the state of incorporation or directors, officers and stockholders) that could likewise have been done by an individual, are to be determined by the same choice-of-law provisions as are applicable to non-corporate parties. Comment b. to § 301, by way of example, lists making contracts, committing torts and receiving and transferring assets as "acts that can be done by both corporations and individuals." Restatement (Second) of Conflict of Laws § 301.

[6] Plaintiff cites *Chrysler Corp. v. Ford Motor Co.,* 972 F.Supp. 1097 (E.D. Mich. 1997), in support of its position. There, plaintiff sued several defendants, seeking declaratory judgment that it was not liable for response costs under

Plaintiff's § 302 analysis assumes contamination is the "occurrence" referenced in § 302(2). However, the particular issue before the court is not contamination, or even what entities or parties can ultimately be held liable for it. Rather, at issue here is which state's law should apply to veil piercing, and the "occurrence" is the alleged control of TFMC by its shareholders and/or NJ Zinc.[7]

Section 307 squarely addresses the issue of what state's law governs shareholders' liability. As noted in *Canal Insurance,* § 307 "comports with United States Supreme Court precedent known as the 'internal affairs doctrine,' which recognizes that 'only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.'" 822 F.Supp.2d at 1184, n.8.

Moreover, to the extent § 302 is relevant, it provides that the law of the state of incorporation controls except in the "unusual case" in which some other state has a more significant relationship to the occurrence and the party. None of the parties to this action are

---

CERCLA or the Michigan Environmental Response Act ("MERA"). Defendants asserted counterclaims based on CERCLA, MERA, and common law theories of public nuisance and unjust enrichment. *Id.* at 1099-1100. The court, applying § 302 of the Restatement (Second), held Michigan had a more significant relationship with the claims in the case than Pennsylvania, the state in which plaintiff was incorporated, because the contamination occurred in Michigan. Therefore, it found Michigan law controlled the issue of whether alter ego liability would be imposed on plaintiff. The defendants in the case included Wayne County, Michigan; Ypsilanti Township; and the University of Michigan Regents—all parties with significant connections with the State of Michigan. *Id*. at 1099. In considering which state's veil piercing laws should be applied, the district court followed a line of decisions holding that a state has a significant interest in applying its law to protect the rights of its own citizens. *Id.* at 1103. Additionally, the court noted Michigan and Pennsylvania law on corporate veil piercing were "substantially similar." *Id.* at 1104.

[7] As the court in *Tomlinson* pointed out, "veil-piercing claims are not claims for substantive relief, but merely furnish a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation." 2009 WL 2601940, at *3, n. 2 (quotations and citations omitted).

9

Oklahoma corporations or have their principal place of business in Oklahoma. TFMC was a Kansas corporation. Plaintiff has not shown Oklahoma has a greater interest than Kansas with respect to the veil-piercing issue.

Applying the Restatement (Second), the court finds the law of the state of incorporation—Kansas—controls the issue of whether the corporate veil of TFMC can be pierced.

### III. Conclusion

For the foregoing reasons, defendants' Motion for Choice of Law Determination [Dkt. #53] is granted. The court holds that the law of Kansas—the state of incorporation of TFMC—shall apply to the issue of whether the corporate veil of TFMC can be pierced.

ENTERED this 12th day of September, 2012.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT