**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CYPRUS AMAX MINERALS COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 11-CV-252-GKF-PJC** |
| | ) | |
| **CBS OPERATIONS, INC., and** | ) | |
| **TCI PACIFIC COMMUNICATIONS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court is the Motion to Compel filed by Plaintiff Cyprus Amax Minerals

Company ("Cyprus") [Dkt. #68], and the Defendants' Motion for Protective Order. [Dkt. # 69].

**Background**

This action arises out of environmental contamination allegedly attributable to two

former zinc smelting facilities located near Collinsville, Oklahoma.  Cyprus, as the successor to

the company that operated one of these facilities, seeks contribution from the party allegedly

liable for the second smelter, to recover expenses Cyprus has incurred and will continue to incur

in cleanup costs pursuant to the Comprehensive Environmental Response, Compensation, and

Liability Act, 42 U.S.C. § 9601 *et seq*. ("CERCLA").  Cyprus has alleged that activities from the

other facility, then owned and operated by Tulsa Fuel & Manufacturing Company ("TFMC")

contributed to the contamination.  Cyprus claims that TFMC was a subsidiary of, or alter ego to,

the New Jersey Zinc Company ("NJZ"), and has alleged that Defendants are the successors to

and/or indemnitors of the liabilities of NJZ.

To make its case against the Defendant(s), Cyprus must first establish that TFMC's

liability for contamination at the Collinsville site was actually, or became, the liability of NJZ.[1]

Cyprus has argued that any purported corporate distinction between TFMC and NJZ should be

ignored under the legal theory of alter ego.[2]  Cyrus would then have to establish that as a result

of a series of complex corporate mergers and acquisitions –  including the 1966 merger of NJZ

into Gulf & Western Industries, Inc. and subsequent corporate transformations in 1995 – one or

more of the  Defendants must bear NJZ's statutory liability under CERCLA.  Defendant TCI

Pacific Communications, Inc. ("TCI") has offered to stipulate that it is *the* successor to NJZ and

would be the party bearing NJZ's CERCLA liability – if any exists.  Cyprus has rejected TCI's

proposal and suggested that TCI stipulate that is *a* successor to NJZ – allowing Cyprus to pursue

its theory that NJZ's statutory liability under CERCLA was transferred to Defendant CBS

Operations ("CBS Ops.") during the 1995 corporate transformations.[3]  For this reason, Cyrpus

seeks extensive discovery regarding CBS Ops. and its involvement in clean-up operations at

other contamination sites around the country related to NJZ.

The issues contained within Plaintiff's Motion to Compel and Defendants' Motion for

Protective Order significantly, if not completely, overlap.  After a hearing on these motions on

---

[1] TFMC operated a smelter at Collinsville from 1911 to 1925.  The company dissolved in 1926.  NJZ existed from the mid-1800s until it merged with Gulf & Western Industries, Inc. in 1966 and, thereafter, ceased to exist as a stand alone corporation.

[2] On Sept. 12, 2012, the District Court held that Kansas law governs the alter ego/corporate shield-piercing issue.  *See*, *Opinion and Order*, [Dkt. No. 89].  Kansas law requires a showing of domination or control *and* that upholding the corporate separateness would result in injustice to the Plaintiff.  *Doughty v. CSX Transp., Inc.*, 905 P.2d 106, 111 (Kan. 1995).

[3] CBS Ops. admits that it acquired certain contractual indemnity obligations to TCI pursuant to the 1995 transactions.  Multiple corporate entities were involved in the 1995 transactions; however, for simplicity, the parent companies and associated entities are referred to herein as TCI and CBS Ops.

September 11, 2012, the Court ordered additional briefing on the potential CERCLA liability of

CBS Ops.  Cyprus argues that the 1995 Implementation Agreement and/or the 1996 Bill of Sale

transferred CERCLA liability to CBS Ops.  Defendants contend that, as a matter of law,

statutory liability under CERCLA may not be transferred, and therefore CBS Ops. could not

have assumed any such direct liability under CERCLA.  In essence, CBS Ops.'s liability – if any

– would be based solely on principles of contractual indemnification.  Cyprus argues that the bar

to transfer of CERCLA liability applies only vis-a-vis the U.S. Government and not where

contribution claims are brought between and among third parties.  This Order addresses solely

whether CERCLA liability could have been transferred to CBS Ops, and therefore whether

Cyprus' corresponding discovery requests are relevant for purposes of analysis under Federal

Rule of Civil Procedure 26.

### Analysis

Generally, Fed. R. Civ. P. Rule 26(b) permits discovery of any matter that is relevant to

the claim and defense of any party as long as that matter is not privileged.  Relevancy is broadly

interpreted at the discovery stage and encompasses "any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case."

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Relevant information need not

be admissible at the trial if the discovery appears reasonably calculated to lead to discovery of

admissible evidence; however, discovery that is *not* reasonably calculated to lead to discovery of

admissible evidence falls outside the scope of Rule 26.

In this instance, the parties agreed to, and the Court ordered, a two-phase discovery

process in which discovery pertaining to "corporate issues" be conducted first.  (*See e.g.*, [Dkt.

Nos. 44 & 86]).  For purposes of this motion, the Court has assessed whether discovery requests

directed towards establishing the transfer of statutory liability upon CBS Ops are relevant.

The dispute concerning transfer of CERCLA liability arises out of seemingly

contradictory language contained in section 107(e)(1) of CERCLA, 42 U.S.C. § 9607(e)(1),

which provides:

> No indemnification, hold harmless, or similar agreement or conveyance shall be
> effective to transfer from the owner or operator of any vessel or facility or from
> any person who may be liable for a release or threat of release under this section,
> to any other person the liability imposed under this section.  Nothing in this
> subsection shall bar any agreement to insure, hold harmless, or indemnify a party
> to such agreement for any liability under this section.

A number of courts have noted the apparent conflict between these two sentences.  *Eg.*,

*In re Babcock & Wilcox Co.*, 413 B.R. 337, 349 n.57 (Bankr. E.D. La. 2009).  However, the

majority of courts have interpreted the provision as allowing *apportionment* of CERCLA

damages pursuant to indemnification agreements while barring *transfer* of the underlying

statutory liability.  *Harley-Davidson, Inc. v. Minstar Inc.*, 41 F.3d 341, 342-43 (7th Cir. 1994).

Writing for the Seventh Circuit, Judge Posner noted that CERCLA "does not outlaw

indemnification agreements, but merely precludes efforts to divest a responsible party of his

liability." *Id*. at 342.  Similarly, the Tenth Circuit has found that the "plain meaning of this

language is that although responsible parties may not altogether *transfer* their CERCLA liability,

they have the right to obtain indemnification for that liability.  *U.S. v. Hardage*, 985 F.2d 1427,

1433 (10th Cir. 1993) (emphasis in original); *see also Mardan Corp. v. C.G.C. Music, Ltd.*, 804

F.2d 1454, 1459 (9th Cir. 1986) (holding that contractual arrangements apportioning CERCLA

liabilities "cannot alter or excuse the underlying liability, but can only change who ultimately

 pays that liability").[4]

Cyrpus relies upon *Horsehead Industries, Inc. v. Paramount Communications Inc.*, 258

F.3d 132, 135 (3d Cir. 2001), for the proposition that the limitation on transferring liability

applies only when the U.S. government is the claimant. [Dkt. # 90, p. 6].  However, in

*Horsehead*, the issue before the court was not whether CERCLA liability could be transferred to

another party, but whether a state court judgment on contractual indemnity could be used to

collaterally estop a CERCLA contribution claim.  *Id.* at 134.  The sentence relied upon by

Cyprus appears in the context of general background and as part of an introductory explanation

of CERCLA liability.  *Id.* at 134-36.  Although the Third Circuit noted that CERCLA did "not

permit the transfer of statutory liability *vis a vis* the Government," it did *not* state that transfer of

liability was permissible *vis a vis* a third party claimant, like Cyprus in the present case.  *Id.* at

---

[4] As an illustrative example, one court explained:

> [A]ssuming that Party A is the government and Party B is an owner-operator who
> sells property to Party C, the clear intent and effect of the first sentence is to void
> any attempt by Party B to contractually transfer, through indemnification or hold
> harmless agreements, to Party C all the liability it owes Party A. In other words,
> Party B cannot, by contractual indemnification, escape its obligations to Party A
> under the Act. . .

> Read in conjunction with the first sentence, insurance, indemnification, or hold
> harmless agreements are valid so long as they do not transfer liability from an
> owner or operator to a third party. Thus, Party C may indemnify or insure Party B
> because this indemnification will not jeopardize Party A's ultimate ability to
> collect the costs of cleanup. The liability remains with the transferor; the
> transferee simply agrees to fund the cleanup on behalf of the transferor.

*Niecko v. Emro Marketing Co.*, 769 F.Supp 973, 988-89 (E.D. Mich. 1991).

135.  As further example, as part of the general background, the opinion noted that a party may

be found statutorily liable to the *government* for cleanup costs, but did not mention liability to

*any* other party.  *Id*. (emphasis added).  CERCLA clearly does not limit the meaning of the term

"claimant" to the government.  42 U.S.C. § 9601 (defining "claimant" as "*any person* who

presents a claim for compensation...") (emphasis added); 42 U.S.C. § 9607(a)(4)(B) (liability for

costs incurred by "any other person").  While generally, it is the government seeking to enforce

the statute – and in fact, in *Horsehead*, the government did initially file the federal action (258

F.3d at 139) – *Horsehead* does not stand for the proposition that the transfer of CERCLA

liability is precluded only when the government is a claimant any more than it stands for the

proposition that only the government may file suit against potentially responsible parties.

The Court adheres to the majority view of section 107(e)(1): Whatever liability CBS Ops.

may have assumed as TCI's indemnitor, the underlying CERCLA liability could not have been

transferred from NJZ's corporate successor to CBS Ops. by way of the 1995 Implementation

Agreement and/or the 1996 Bill of Sale.  For example, one district court found that "liable

parties can contractually shift responsibility for their response costs among each other

[indemnity], but they may not thereby escape their underlying liability to the Government *or*

*another third party*.  *Purolator Products Corp. v. Allied-Signal, Inc*., 772 F.Supp. 124, (W.D.

N.Y. 1991) (emphasis added) (*cited with approval in Hardage*, 985 F.2d at 1433).  This is

consistent with the legislative intent to hold responsible parties liable for the costs of the

cleanup.  *Niecko*, 769 F. Supp. at 988; *see also Harley-Davidson*, 41 F.3d at 343-44 (Congress

considered allowing the transfer of liability, but the provision was ultimately dropped.).

Although "responsible parties may enter insurance agreements to add parties who will pay for

the cleanup[,] [t]hey may not. . . avoid liability to the claimant (usually the government) by transferring this liability." *Niecko*, 769 F. Supp. at 988.

Having determined that underlying CERCLA liability could not be transferred to CBS Ops., the Court further finds that discovery requests served by Cyprus to Defendants that seek to establish the transfer of statutory CERCLA liability to CBS Ops. are irrelevant and are not reasonably calculated to lead to discovery of admissible evidence. Thus, with respect to this specific issue, the Motion to Compel is **DENIED** and the Motion for Protective Order is **GRANTED**.

### Conclusion

In light of these rulings, as well as that of the District Court regarding choice of law pertaining to the corporate shield-piercing question, the Court is unclear whether other discovery issues are still unresolved. **ACCORDINGLY**, the parties are hereby ordered to conduct another "meet and confer" to address what, if any, discovery disputes remain outstanding. The parties shall so advise the Court by October 26, 2012.

IT IS SO ORDERED, this 12th day of October, 2012.

Paul J. Cleary
United States Magistrate Judge