UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYPRUS AMAX MINERALS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-0252-JED-PJC |
| ) | |
| TCI PACIFIC COMMUNICATIONS, INC., ) | |
| and CBS OPERATIONS, INC. ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

The Court has for its consideration Defendants' Rule 12(b)(6) Motion to Dismiss Claims in Plaintiff's Amended Complaint and Integrated Brief in Support (Doc. 114).  Defendants move the Court to (1) dismiss Counts I and II of the amended complaint as to both defendants because plaintiff cannot, as a matter of law, pursue cost recovery claims under 42 U.S.C. § 9607 of the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601 *et seq*.) ("CERCLA"); (2) dismiss Counts I through VII of the amended complaint as to defendant CBS Operations Inc. because it is not subject to CERCLA liability; and (3) dismiss plaintiff's unjust enrichment claim, Count VIII of the amended complaint, against both defendants because it is preempted and is otherwise barred.

   I.   BACKGROUND

This case involves environmental contamination in the City of Collinsville, Oklahoma and surrounding areas, which is attributable to two former zinc smelting operations in the area. Plaintiff Cyprus Amax Minerals Company ("Cyprus"), as a successor to the corporate parent company that operated one of the smelting facilities, has cooperated with state and federal authorities in remediating the contamination.  In 2009, the Oklahoma Department of

Environmental Quality ("ODEQ") filed a Complaint against Cyprus Amax in this Court, alleging that Cyprus Amax is the successor in interest to the corporate parent of the company that operated the Bartlesville Zinc Smelter ("BZ Smelter"), and asserting CERCLA claims for the environmental contamination in Collinsville, Oklahoma (the "Collinsville Town Site"). The 2009 lawsuit was resolved through entry of a Consent Decree (the "2009 Consent Decree"), pursuant to which Cyprus agreed to undertake certain actions in Collinsville. Thereafter, in April of 2011, Cyprus brought this action against the defendants CBS Operations, Inc. ("CBS Ops") and TCI Pacific Communications, Inc. ("TCI") pursuant to CERCLA and state law to recover costs it has incurred in that cleanup.

Cyprus asserts seven claims for recovery of cleanup costs and declaratory judgment. Additionally, it asserts a common law claim for unjust enrichment against defendants. The two former zinc smelting facilities at issue – the BZ Smelter and the Tulsa Fuel and Manufacturing Zinc Smelter ("TFM Smelter") – are located approximately one mile south of Collinsville. Cyprus alleges that, between 1911 and 1925, the TFM Smelter was nominally owned and/or operated by Tulsa Fuel and Manufacturing Company ("TFMC"), a corporation organized under the laws of the State of Kansas in 1906 and later dissolved in 1926. Cyprus asserts that at all relevant times, TFMC was dominated and controlled by, or was operated for the benefit of, and was the "alter ego" of, the New Jersey Zinc Company ("NJ Zinc"). Plaintiff alleges defendants TCI and CBS are the successors to the liabilities of NJ Zinc. Cyprus asks the court to "pierce the corporate veil" of TFMC, determine that NJ Zinc is responsible for the liabilities of TFMC and, as a result, impose those liabilities on TCI and CBS.

This Court has issued substantive opinions with respect to two legal issues thus far in this litigation. In its September 12, 2012 Opinion and Order (Doc. 89), the Court determined that

Kansas law would be applied with respect to whether the corporate veil of TFMC can be pierced. In its January 22, 2013 Opinion and Order (Doc. 110), the Court held, in the context of reviewing an objection to the Magistrate Judge's discovery order, that a complete transfer/creation of direct CERCLA liability by contract is barred under 42 U.S.C. § 9607(e)(1). The above-referenced second Opinion and Order (Doc. 110) is directly relevant to issues raised in defendants' motion to dismiss, as will be discussed *infra*.

## II.   STANDARD

In considering a motion under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562. Although decided within an antitrust context, *Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting

factual averments are insufficient to state a claim upon which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (quoting *Hall v. Bellmon*, 935 F.3d 1106, 1109-10 (10th Cir. 1991)).

### III. DISCUSSION

#### A. Counts I and II as to Both Defendants

CERCLA, enacted in 1980, has twin aims: "to cleanup hazardous waste sites and impose the costs of such cleanup on parties responsible for the contamination." *Young v. United States*, 394 F.3d 858, 862 (10th Cir. 2005) (citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)). In its original form, CERCLA created only the cost recovery mechanism of § 107 (42 U.S.C. § 9607), which makes certain potentially responsible parties ("PRPs") liable for all costs of removal or remedial action incurred by government entities and any other necessary costs of response incurred by any other person consistent with the National Contingency Plan ("NCP"). *See* 42 U.S.C. §§ 9607(a)(4)(A) and (B). Thus, as originally enacted, if a PRP was singled out as a defendant in a cost recovery action by the government, it was without any means of apportioning costs to other PRPs who may have contributed much of the waste. *See United States v. Colorado & Eastern Railroad Co.*, 50 F.3d 1530, 1535 (10th Cir. 1995). As a result, courts began to recognize an implicit contribution right, which Congress later codified in § 113 (42 U.S.C. § 9613).

Section 113 creates two distinct rights to contribution. The first, 42 U.S.C. § 9613(f)(1), states as follows:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.

This provision creates a statutory right for a PRP to seek contribution against others who may be responsible for some of the expenses incurred by that party. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004). The second contribution right of action is codified at 42 U.S.C. § 9613(f)(3)(B):

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

In addition, § 113(f)(2) states that a "person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). In other words, "a party that has settled its liability under CERCLA may bring a CERCLA contribution action against a non-settling party and is also protected from any contribution claims made by others relative to the site that is the subject of the settlement." *W.R. Grace & Co.-Conn. V. Zotos Int'l, Inc.*, 2005 WL 1076117, *2 (W.D.N.Y. May 3, 2005). This second contribution right is the operative one for purposes of this litigation as Cyprus has resolved its liability through a judicially approved settlement; namely, the 2009 Consent Decree.

The interplay between §§ 107 and 113 has been the subject of much dispute.[1] In *United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007), the Supreme Court recognized that §§

---

[1] One may ask, what is the significance of a party's recovery under § 107 versus §113? It is generally acknowledged that there are three important differences between cost recovery under § 107 and contribution under § 113:

> (1) the statute of limitations governing cost recovery under section 107 is significantly greater than that governing contribution under section 113; (2) a cost recovery action imposes joint and several liability on the defending PRPs, while a contribution action imposes only several liability on such parties; and (3) liability under section 107, after a prima facie showing, may be avoided only through the

107 and 113 provide two "clearly distinct" remedies that "complement each other by providing causes of action 'to persons in different procedural circumstances.'"  551 U.S. at 138-139.  The Supreme Court has considered whether a PRP who voluntarily incurs costs – i.e., a PRP who has not been subject to a § 107 cost recovery action and who has not resolved its liability to the United States or a State by way of a consent decree or otherwise – may pursue a cost recovery action under CERCLA § 107 or whether it is limited to a § 113 contribution remedy.  *Id*. at 133-34.  The Supreme Court held that, under those circumstances, the plaintiff was permitted to pursue a § 107 claim.  However, the Court expressly declined to determine the specific issue presented here, stating:

> [W]e recognize that a PRP may sustain expenses pursuant to a consent decree following a suit under § 106 or § 107(a). *See, e.g., United Technologies Corp. v. Browning–Ferris Industries, Inc.*, 33 F.3d 96, 97 (C.A.1 1994). In such a case, the PRP does not incur costs *voluntarily* but does not reimburse the costs of another party. We do not decide whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both.

*Id*. at 139 n.6 (italics added).

Defendants argue that Cyprus' claims under § 107 must be dismissed as to both defendants because Cyprus is limited to seeking a contribution claim under § 113.  Defendants point to the fact that, since the Supreme Court's decision in *Atlantic Research*, every circuit court to have considered the issue has held that a party that has accepted CERCLA liability by way of a consent decree is limited to seeking the remedy of contribution under § 113.  Cyprus responds

---

use of the three affirmative defenses listed in section 107(b), while section 113 actions allow a host of statutory and equitable defenses.

Alan Hanson, *Cost Recovery or Contribution?: An Overview and Resolution of the Controversy Surrounding Private Prp Standing Under CERCLA Sections 107(a)(4)(b) and 113(f)(1)*, 10 Geo. Int'l Envtl. L. Rev. 199, 204 (1997); *see also Solutia, Inc. v. McWane, Inc.*, 726 F. Supp. 2d 1316, 1343 (N.D. Ala. 2010) *aff'd*, 672 F.3d 1230 (11th Cir. 2012) (discussing differences between §§ 107 and 113).

by suggesting that, because the Tenth Circuit has not decided the issue, its § 107 claims should be stayed pending such a decision.

At this time, five circuit courts have decided the question presented here. *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013); *Solutia Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236–37 (11th Cir. 2012); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011); *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 229 (3d Cir. 2010); *Niagara Mohawk Power Corp. v. Chevron U.S.A.*, Inc., 596 F.3d 112, 128 (2d Cir. 2010). In each of these cases, the court held that a plaintiff could not pursue a cost recovery claim under § 107 where its own CERCLA liability had been previously resolved by settlement in either a consent decree or administrative order. The reasoning underlying these decisions is generally twofold. As the Third Circuit explained in *Agere Systems*, permitting such a claim under § 107 would theoretically allow the plaintiff to recover the full costs it had already incurred in cleanup, thereby skirting its own financial obligations associated with the pollution at issue:

> [Plaintiffs who had entered into consent decrees with the EPA] would not be subject to equitable allocation. They would have no liability because they would be able to assert joint and several liability against the other parties. This is a perverse result, since a primary goal of CERCLA is to make polluters pay.

*Agere Sys.*, 602 F.3d at 228 (internal citation and quotations omitted). Put differently, a windfall would result because the defendants would be barred from asserting a § 113 counterclaim against the plaintiff under the § 113 protection afforded to settling PRPs. 42 U.S.C. § 9613(f)(2). The Seventh Circuit's recent *Bernstein* decision was dubious of this theoretical harm actually occurring due to equitable powers available to courts under CERCLA, and instead expressed a different concern:

> When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect….Through SARA, Congress intentionally amended CERCLA to include express rights to contribution, subject to certain

7

> prerequisites. If § 9607(a) already provided the rights of action contemplated by the SARA amendments, then the amendments were just so many superfluous words. The canons of statutory construction counsel against any interpretation that leads to that result.

*Bernstein*, 733 F.3d at 207 (internal citation and quotations omitted). In other words, if a settling plaintiff were permitted to recover under § 107, it would essentially render Congress' decision to add CERCLA remedies under § 113 meaningless.

The Tenth Circuit has not yet considered the precise issue presented here, subsequent to *Atlantic Research*. However, before that decision, the Tenth Circuit held that "claims between PRPs to apportion cost between themselves are contribution claims pursuant to § 113 regardless of how they are pled." *United States v. Colorado & E. R. Co.*, 50 F.3d 1530, 1539 (10th Cir. 1995); *see also Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1133 (10th Cir. 2002) (discussing the interplay between §§ 107 and 113 and recognizing prior Tenth Circuit precedent holding "that where one PRP sues another PRP for reimbursement of cleanup costs imposed as a result of a previous lawsuit or administrative order by the EPA, the plaintiff PRP must proceed under the contribution provisions of [§ 113] and is barred from proceeding under [§ 107].").[2] The Court sees no reason to believe that the Tenth Circuit would hold otherwise post-*Atlantic Research*.

Cyprus has not pointed to a single case which has reached a result contrary to the circuit authority cited above, and this Court is aware of none. In light of the single-sided nature of the post-*Atlantic Research* circuit case law and the referenced Tenth Circuit decisions, this Court finds that Cyprus' § 107 claim is barred under the circumstances presented in this case. As a

---

[2] This Court recognizes that, to the extent these Tenth Circuit opinions hold that a PRP can *never* pursue a cost recovery claim, those opinions have been abrogated by *Atlantic Research*, where the Supreme Court held that a PRP *could* pursue a § 107 claim where it had *voluntarily* incurred cleanup costs.

8

PRP subject to a consent order, Cyprus did not voluntarily undertake its CERCLA costs and may not seek a cost recovery claim under § 107. Accordingly, Counts I and II of Cyprus' amended complaint are dismissed with prejudice.

### B. Claims against CBS Ops

Defendants also urge the Court to dismiss all of Cyprus' CERCLA claims against CBS Ops (Counts I through VII) because there is no basis for CERCLA liability as to CBS Ops. Cyprus does not refute this assertion, but instead argues that CBS Ops should not be dismissed because it is a necessary party to this litigation as the contractual indemnitor of TCI. In the alternative, Cyprus asks that, should the Court determine CBS Ops is not a necessary party, it should stay the claims against CBS Ops so that, if Cyprus prevailed against TCI, CBS Ops would be before the Court to answer for its indemnity obligation.

Under both §§ 107 and 113, a plaintiff must prove, among other things, that the defendant is a party that should be held responsible. CERCLA § 107(a) identifies four categories of "covered persons," or PRPs, who are potentially liable:

> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ...."

*Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 608-09 (2009) (quoting 42 U.S.C. § 9607(a)).  Cyprus does not allege that CBS Ops falls into any of these categories. Instead, Cyprus alleges that CBS Ops had assumed CERCLA liability by contract.  In its January 22, 2013 Opinion and Order (Doc. 110), this Court held, in accordance with the majority view on the subject, that § 107(e)(1) bars the contractual transfer/creation of direct liability under CERCLA.  Hence, CBS Ops' liability under §§ 107 and 113 of CERCLA cannot be based upon the contractual indemnity agreement between TCI and CBS Ops.

In an attempt to retain CBS Ops' presence in this litigation, Cyprus argues that CBS Ops is an indispensable party under Fed. R. Civ. P. 19.  Rule 19 provides a mechanism for joinder of parties which are considered necessary to the litigation.  Rule 19(a)(1) requires a non-party to be joined in an action whenever "(A) the court cannot accord complete relief among existing parties in that non-party's absence; or (B) the non-party claims an interest related to the subject of the action and is so situated that disposing of the action in the [non-party's] absence may: (i) as a practical matter impair or impede the [non-party's] ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

Rule 19 does not provide Cyprus with an independent basis for keeping CBS Ops in this litigation. The Tenth Circuit has explained that, in circumstances where a party seeking affirmative relief (i.e. a plaintiff or counterclaimant) seeks to add a party-defendant, Rule 19 is "inapplicable, because, while it provides for the 'Joinder of Persons Needed for Just Adjudication,'… it does not provide a joinder mechanism for plaintiffs." *Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 66 (10th Cir. 2005).  TCI – the type of party for which Rule 19 is designed – is not seeking to keep CBS Ops in this litigation.  Moreover, as explained previously

10

(and *infra*, with respect to Cyprus' unjust enrichment claim), Cyprus has no viable claims against CBS Ops. Dismissing CBS Ops from this case does not prevent the Court from affording complete relief among Cyprus and TCI, nor would CBS Ops' dismissal impair its ability to protect its interest or leave either remaining party with a risk of incurring inconsistent obligations.

Given that there is no basis to hold CBS Ops liable under CERCLA and it is not a necessary or indispensible party under Rule 19, the remaining CERCLA claims against CBS Ops (Counts III through VII) are dismissed.[3] Such dismissal is with prejudice, as these claims cannot be salvaged by amendment.[4] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### C. Unjust Enrichment Claim against Both Defendants

Finally, defendants argue that Cyprus' claim for unjust enrichment (Count VIII) against them should be dismissed for three reasons: Cyprus had a legal duty to clean up the Collinsville Town Site under the terms of the 2009 Consent Decree; Cyprus has an adequate remedy at law; and the claim is preempted by CERCLA. The Court finds the preemption issue to be dispositive and will thus limit its analysis to that issue.

Under the terms of the 2009 Consent Decree, Cyprus has been required to remediate the Collinsville Town Site, which the agreement defines as "all residential properties, commercial

---

[3] The Court finds no basis for staying the CERCLA claims against CBS Ops, as Cyprus requests. Such a stay would simply be delaying the inevitable, as there is no valid basis for permitting Cyprus' claims to remain outstanding with respect to CBS Ops.

[4] Cyprus asks that, should the Court dismiss its CERCLA claims against CBS Ops, such dismissal be without prejudice. The Court sees no legitimate justification for dismissing the claims without prejudice, as CBS Ops is simply not subject to CERCLA liability under the circumstances presented here.

properties, houses of worship, childcare facilities, vacant fields, parks and schools located within the corporate limits of the City of Collinsville or within one mile of such limits or anywhere Waste Materials from the former [BZ Smelter] have become located." (Doc. 114-1, at 4).

CERCLA contains saving clauses which expressly provide that CERCLA does not abrogate certain state common law remedies with respect to the release of hazardous substances. *See* 42 U.S.C. §§ 9614(a) and 9652(d). As such, the Tenth Circuit has held that "Congress did not intend CERCLA to completely preempt state laws related to hazardous waste contamination." *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1244 (10th Cir. 2006) (citing *Fireman's Fund Ins. v. City of Lodi*, 302 F.3d 928, 941-43 (9th Cir. 2002)). Because of the saving clauses present in CERCLA, preemption analysis relative to CERCLA is done under conflict preemption principles. *See e.g., Buckman Co. v. Plaintiff's Legal Comm.,* 531 U.S. 341, 348 (2001) (recognizing that a saving clause does not bar application of conflict preemption principles).

The conflict preemption analysis of state law claims pled collaterally to a CERCLA claim "ask[s] whether that claim, or any portion thereof, stands as an obstacle to the accomplishment of congressional objectives as encompassed in CERCLA." *Gen. Elec. Co.*, 467 F.3d at 1244; *see also Wyoming v. United States,* 279 F.3d 1214, 1234 (10th Cir. 2002) (recognizing "[t]he Supreme Court has repeatedly declined to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law"). While the Tenth Circuit did not address the issue of whether a claim for unjust enrichment was preempted by CERCLA in *Gen. Elec. Co.*, that issue was decided by the Second Circuit in *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 139 (2d Cir. 2010) using substantially the same analysis as that performed by the Tenth Circuit. In *Niagara Mohawk*, the court held that the plaintiff's

state law unjust enrichment claim was preempted because it threatened to undermine the settlement scheme created by § 113 of CERCLA:

> Congress created the statutory right to contribution in § 113(f) in part to encourage settlements and further CERCLA's purpose as an impetus to efficient resolution of environmental hazards. *See Atl. Research*, 551 U.S. at 141, 127 S.Ct. 2331; *see also Marsh*, 499 F.3d at 180. *Section 113 is intended to standardize the statutory right of contribution and, in doing so, avoid the possibility of fifty different state statutory schemes that regulate the duties and obligations of non-settling PRPs who might be viewed as tortfeasors under the law of any particular state*. Based on the text, § 113 was intended to provide the only contribution avenue for parties with response costs incurred under CERCLA.27 *See* 42 U.S.C. § 9613(f)(3)(C) ("Any contribution action brought under this paragraph shall be governed by Federal law.").

*Id*. at 138 (italics added).

The Court finds *Niagara Mohawk* to be persuasive with respect to Cyprus' unjust enrichment claim. Cyprus' amended complaint states that "Cyprus Amax has, by its expenditures in treating, remediating, and removing metals and other smelter waste materials in soils, sediments and surface water at the Collinsville Town Site, incurred the cost of handling, treating, and/or disposing of metals and other smelter wastes, which Defendants by law and equity should bear." (Doc. 106, at 36-37). As such, Cyprus' unjust enrichment claim, as pled, seeks to recover only damages resulting from the cleanup it was required to perform under CERCLA and the 2009 Consent Decree. The unjust enrichment claim thus would undermine the § 113 settlement framework intended by Congress, as permitting such a claim would allow Cyprus to seek recompense for its CERCLA costs "outside the limitations and conditions of CERCLA." *See Niagara Mohawk*, 596 F.3d at 138. The claim is therefore preempted. Because Cyprus' unjust enrichment claim is preempted by CERCLA, it is dismissed with prejudice. *See, .e.g., Baker v. Allied Chem. Corp*., 503 F. App'x 643 (10th Cir. 2012) (affirming dismissal with prejudice of plaintiff's state law claim preempted by ERISA).

13

**IT IS THEREFORE ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss Claims in Plaintiff's Amended Complaint and Integrated Brief in Support (Doc. 114) is **granted**. Counts I and II of the amended complaint are dismissed with prejudice as to both defendants. Counts III through VII of the amended complaint are dismissed with prejudice as to defendant CBS Operations Inc. Count VIII of the amended complaint is dismissed with prejudice as to both defendants. Counts III through VII of the amended complaint remain as to defendant TCI.

**SO ORDERED** this 3rd day of December, 2013.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE