**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **Cyprus Amax Minerals Company,** | ) ) | |
| Plaintiff, | ) ) ) | Case No.  11-CV-0252-CVE-FHM |
| vs. | ) ) | |
| **TCI Pacific Communications, Inc.** | ) ) | |
| Defendant. | ) ) | |

**JOINT PRETRIAL ORDER**

Following a pretrial conference, the following pretrial order is entered:

**I.     PARTIES' JOINT STATEMENT OF THE CASE.**

Plaintiff Cyprus Amax Minerals Company ("Cyprus") asserts CERCLA contribution claims in this matter arising from the detection of elevated levels of lead, arsenic and/or cadmium in soils in and around the City of Collinsville, Oklahoma, which are alleged by Cyprus to be attributable to the historical operations of two former zinc smelting facilities located approximately one mile south of Collinsville.  One smelter (the "BZ Smelter") was owned and operated by a former subsidiary of a corporate predecessor of Cyprus.  The other smelter (the "TFM Smelter") was owned and operated by the Tulsa Fuel and Manufacturing Company ("TFMC"), which the Court ruled to be a subsidiary of and alter ego of the New Jersey Zinc Company ("NJZ").  Defendant TCI Pacific Communications, Inc. ("TCI") is the admitted successor to NJZ's environmental liabilities.

Pursuant to a 2009 Consent Decree between Cyprus and the Oklahoma Department of Environmental Quality ("ODEQ"), Cyprus has been investigating and remediating soils in Collinsville and surrounding areas pursuant to a program called the "Collinsville Soil Program"

("CSP"). The federal Consent Decree incorporated an ODEQ Action Memorandum describing the CSP work to be performed. To date, Cyprus claims to have incurred over $31 million in response costs in implementing the CSP.

Cyprus claims that hazardous substances from the historical operations of the TFM Smelter caused it to incur necessary response costs in performing the CSP and that TCI is thus liable for a share of the costs that Cyprus has incurred in implementing the CSP. Counts III and V of Cyprus's Amended Complaint allege claims against TCI for CERCLA contribution as a former owner or operator of a facility where hazardous substances were released, and Counts IV and VI allege claims against TCI for CERCLA contribution as an arranger for the disposal of hazardous substances. Count VII of the Amended Complaint seeks a declaratory judgment that TCI is liable to Cyprus for future response costs. TCI denies these allegations.

TCI asserts that it is not liable under CERCLA because the TFM Smelter did not contribute to impacts in soils addressed in the CSP, and further argues that Cyprus cannot show that its response costs were reasonable, necessary and/or consistent with USEPA's National Contingency Plan ("NCP"), 40 C.F.R. Section 300. TCI also asserts that any costs associated with smelter air emissions are not recoverable because smelter air emissions cannot constitute "disposal" as that term is used in CERCLA.

## II.  FACTS ADMITTED AND REQUIRING NO PROOF.

1. Plaintiff Cyprus Amax Minerals Company ("Cyprus") is a Delaware corporation with its principal place of business located at 333 North Central Avenue in Phoenix, Arizona.

2. The Bartlesville zinc smelter ("BZ Smelter") operated from approximately 1911 to 1918 and was owned and operated by the Bartlesville Zinc Company, a former subsidiary of a corporate predecessor of Cyprus.

3. The BZ Smelter was located approximately one mile from Collinsville, Oklahoma.

4. Defendant TCI Pacific Communications, Inc. ("TCI") is a Delaware limited liability company.

5. TCI is the admitted successor to the New Jersey Zinc Company ("NJZ").

6. The Tulsa Fuel and Manufacturing Company ("TFMC") zinc smelter ("TFM Smelter") was owned and operated from approximately 1911 to 1926 by TFMC.

7. The TFM Smelter was located approximately one and one-quarter (1¼) miles from Collinsville, Oklahoma.

8. Both the TFM Smelter and the BZ Smelter were horizontal retort zinc smelter operations constructed in or about 1911.

9. The TFM Smelter and the BZ Smelter operated during overlapping time periods. Both smelters operated concurrently for a period of between 6 and 7 years (with varying periods in which the smelters were shut down at each site), until the BZ Smelter ceased operations in 1918. The TFM Smelter continued to operate until 1926.

10. Both the TFM Smelter and the BZ Smelter generated smelter air emissions through the smokestacks of their smelting operations.

11. Cyprus has been assessing and addressing environmental contamination on and around the former BZ Smelter site pursuant to a 1996 Consent Agreement and Final Order with the Oklahoma Department of Environmental Quality ("ODEQ").

12. USEPA placed the TFM Smelter site on the National Priorities List in 1999.

13. In 1999, ODEQ and USEPA Region 6 entered into a Memorandum of Agreement ("MOA") relating to the ODEQ's Voluntary Cleanup Program.

14. USEPA conducted a Supplemental Remedial Investigation and Feasibility Study for the TFM Smelter site between November 2007 and March 2008.

15. TFMC disposed of smelter waste containing hazardous substances at the TFM Smelter site.

16. The Bartlesville Zinc Company disposed of smelter waste containing hazardous substances at the BZ Smelter site.

17. The 2014 Draft Remedial Action Completion Report for the Collinsville Soil Program – Phase 1 indicates that a total of 32,983 cubic yards of soils were removed from 284 properties within the CSP study area. This conclusion is consistent with the final Remedial Action Completion Report for the CSP released in 2017.

### III.   OBJECTIONS RESERVED AS TO ADMITTED FACTS.

None at this time; the parties reserve the right to assert any such objections based on discussions at the Pretrial Conference on January 11, 2018 or otherwise prior to trial.

### IV.   FACTS NOT ADMITTED BUT NOT TO BE CONTESTED AT TRIAL.

None at this time; the parties reserve the right to identify any such facts based on discussions at the Pretrial Conference on January 11, 2018 or otherwise prior to trial.

### V.   CASE MANAGEMENT CONFERENCE LIMITATIONS.

A case management conference has not taken place in this action. To the extent that any such matters are discussed at the Pretrial Conference on January 11, 2018, this Joint Proposed Pretrial Order may be amended to incorporate them as necessary.

**VI.    DISPUTED ISSUES OF LAW TO BE LITIGATED AT TRIAL.**

*Disputed Issues of Law Identified by Plaintiff:*

1.      Whether TCI is a CERCLA "covered person" as a former owner and operator of the TFM Smelter.  [Cyprus believes that this issue has already been determined by Court in the affirmative in its June 20, 2017 Summary Judgment Opinion and Order (pp. 4, 16, 19), given that TFMC was a subsidiary and alter ego of NJZ; TCI is the admitted successor to NJZ; hazardous substances were disposed of at the TFM Smelter site during TFMC's ownership and operation of the TFM Smelter; and "'facility' in this case includes the TFM Smelter Site and the CSP, because the same hazardous substances were found in both sites and there is a significant likelihood that some of the hazardous substances found in the area of the CSP came from the TFM Smelter."]

2.      Whether TCI is a CERCLA "covered person" as an arranger of hazardous wastes from the TFM Smelter to Collinsville and surrounding areas.

3.      Whether there were releases or threatened releases of hazardous substances from the TFM Smelter into Collinsville and surrounding areas.  [Cyprus believes that this issue has already been determined by Court in the affirmative in its June 20, 2017 Summary Judgment Opinion and Order (p. 20) ("[f]or the same reasons as stated in the context of the Court's 'disposal' analysis, the Court finds that the hazardous substances were released from the TFM Smelter.")].

4.      Whether air emissions from the TFM Smelter were a plausible migration pathway for the release or threatened release of hazardous substances from the TFM Smelter to the CSP area, which caused Cyprus to incur response costs to investigate and remediate soil contamination in the CSP area.

5. Whether the transport of visible smelter waste containing hazardous substances from the TFM Smelter into Collinsville and surrounding areas was a plausible migration pathway for the release or threatened release of hazardous substances from the TFM Smelter to the CSP area, which caused Cyprus to incur response costs to investigate and remediate soil contamination in the CSP area.

6. Whether the costs incurred by Cyprus to implement the CSP under the terms of the 2009 Consent Decree and the ODEQ Action Memorandum were necessary costs of response under CERCLA.

7. Whether Cyprus is entitled to a rebuttable presumption that its CSP work was consistent with the NCP based upon its participation in ODEQ's Voluntary Cleanup Program, authorized pursuant to a Memorandum of Agreement between ODEQ and USEPA; and even if not, whether the work performed by Cyprus in implementing the CSP under the direction and supervision of ODEQ was substantially consistent with the NCP.

8. Whether the allocation as between Cyprus and TCI of recoverable response costs incurred by Cyprus should be based on the relative production capacities of the TFM Smelter and the BZ Smelter.

9. Whether the allocation as between Cyprus and TCI of recoverable response costs incurred by Cyprus should be adjusted to require TCI to pay a greater portion of costs based on TCI's recalcitrance.

*Disputed Issues of Law Identified by Defendant:*

1. Whether emissions released into the air from smelter smokestacks, furnaces, and/or other process-related smelting equipment or structures such as ore storage bins (collectively, "Smelter Air Emissions") constitute "disposal" under CERCLA, 42 U.S.C. § 9601 *et. seq.* including, but not limited to, 42 U.S.C. § 9601 (29) and 42 U.S.C. § 9607.

2. Whether intentional off-site transport of materials from one site to another site can constitute a "plausible migration pathway" for purposes of establishing the causation element of a *prima facie* case of CERCLA liability in a "two-site case."

3. Whether TCI can be held liable under a theory of "arranger" liability under 42 U.S.C. § 9607(a)(3) for hazardous substances, if any, transported from the TFM Smelter site after TFMC was dissolved as a corporation in 1926.

4. Whether TCI can be held liable under a theory of "former owner and/or operator" liability under 42 U.S.C. § 9607 (a)(2) for disposal of hazardous substances, if any, that took place after TFMC was dissolved as a corporation in 1926.

5. Whether TCI is entitled to entry of judgment as a matter of law if Cyprus fails to offer sufficient evidence that fugitive air emissions, if any, from waste left on the ground at the TFM Smelter site caused it to incur response costs that are recoverable under CERCLA.

6. Whether TCI can be held liable for response costs alleged to be associated with road-building activity in the absence of evidence demonstrating that such road building activity caused Cyprus to incur response costs.

7. Whether costs that Cyprus incurred pursuant to the Collinsville Soil Program are entitled to a presumption of a compliance with the National Contingency Plan.

8. Whether Cyprus is required to provide affirmative expert evidence to demonstrate the existence of a "plausible migration pathway" between the TFM Smelter site and property located within the boundaries of the 48-square mile CSP in support of its theory of liability premised on Smelter Air Emissions.

9. Whether Cyprus is required to provide affirmative expert evidence to demonstrate the existence of a "plausible migration pathway" between the TFM Smelter site and property located within the boundaries of the 48-square mile CSP in support of its theory of liability premised on "fugitive air emissions" from waste left on the ground.

10. Whether Cyprus is required to provide affirmative expert evidence to dispute the findings and conclusion in the 2008 USEPA/CH2M Hill Supplemental Remedial Investigation Report for the TFMC Smelter site that "[t]he data collected for the supplemental RI for the TFM Superfund Site indicates…no impact associated with the dispersion of airborne particulates on to the ground in the area surrounding the Site."

11. Whether air can be considered a "plausible migration pathway" in light of the 2008 USEPA/CH2M Hill Supplemental Remedial Investigation Report for the TFM Smelter site which concluded that "[t]he data collected for the supplemental RI for the TFM Superfund Site indicates…no impact associated with the dispersion of airborne particulates on to the ground in the area surrounding the Site."

12. Whether any proffered evidence of road-building must be conditioned upon first demonstrating that (a) the road was actually built, and (b) the road is located within the boundaries of the Collinsville Soil Program.

13. Whether, and to what extent, any costs for which Cyprus seeks contribution from TCI are necessary costs of response.

14. Whether, and to what extent, any costs for which Cyprus seeks contribution from TCI are reasonable costs of response.

15. Whether, and to what extent, any costs for which Cyprus seeks contribution from TCI are consistent with the National Contingency Plan.

16. Whether the 48-square mile size and shape of the CSP was excessive in scope.

17. Whether the CSP resulted in a CERCLA-quality cleanup.

18. Whether Cyprus properly developed a conceptual site model for the CSP.

19. Whether expert testimony offered by Cyprus satisfies the relevance and reliability standards set by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

20. Whether evidence of Cyprus's payment of $118,975,000 to settle a property damage class action lawsuit in Blackwell, Oklahoma based upon contamination from a historical zinc smelter: (a) is relevant to the Court's determination of whether the 48-square mile scope of the Collinsville Soil Program was reasonable, necessary, or otherwise consistent with applicable legal requirements for recovering response costs under CERCLA; and (b) should be included in the equitable factors that will guide the Court's decision on how to allocate response costs, if any, which the Court determines Cyprus is entitled to seek contribution from TCI.

21. Whether TCI's decision not to participate in the CSP was reasonable based on the historical records, agency findings and reports, and existing legal guidance.

*Note:* To the extent the Court may determine that any of the parties' foregoing disputed issues of law are more properly characterized as disputed issues of fact, the parties respectfully request that those issues be treated as if they were included as disputed issues of fact in Section VIII. below.

## VII.  DISPUTED ISSUES OF FACT TO BE LITIGATED AT TRIAL.

*Disputed Issues of Fact Identified by Plaintiff*:

1. Whether the TFM Smelter generated air emissions during its operations, including both direct air emissions from smokestacks and vents and fugitive air emissions from materials handling and other activities, which contained hazardous substances including lead, cadmium and arsenic, and which caused Cyprus to incur response costs to investigate and remediate impacted soils in Collinsville and surrounding areas.

2. Whether the TFM Smelter generated visible smelter waste materials during its operations, such as broken and spent retorts, condensers, firebrick, slag, residue, ash and cinders, which contained hazardous substances including lead, cadmium and arsenic, which came to be located in Collinsville and surrounding areas, and which caused Cyprus to incur response costs to investigate and remediate impacted soils in these areas.

3. Whether ODEQ is of the view that the historical operations of both the BZ Smelter and the TFM Smelter contributed to elevated levels of lead, arsenic and cadmium detected in soils in Collinsville and surrounding areas, including areas within the CSP.

4. Whether air emissions and placement of visible smelter waste materials constitute plausible migration pathways for the release or threatened release of hazardous substances from the TFM smelter site to Collinsville and surrounding areas, including the CSP study area.

5. Whether the scope of the CSP study area was determined in coordination with ODEQ and with ODEQ's approval, based upon information obtained in USEPA's and ODEQ's investigations of the TFM Smelter and BZ Smelter sites.

6. Whether Cyprus implemented the CSP work under the supervision and direction of ODEQ and in accordance with ODEQ-approved work plans, in a manner that resulted in a CERCLA-quality cleanup.

7. Whether ODEQ is of the view that the CSP work performed by Cyprus pursuant to the 2009 Consent Decree and the ODEQ Action Memorandum was necessary, protective of human health and the environment, and substantially compliant with the NCP.

8. Whether Cyprus has produced evidence that the work it performed to implement the CSP was in substantial compliance with all requirements of the NCP.

9. Whether Cyprus has produced evidence that its response costs were actually incurred, and that the costs that Cyprus has identified as recoverable were necessary and reasonably related to investigation and remediation of releases or threatened releases of hazardous substances in Collinsville and surrounding areas.

10. Whether the total amount of recoverable costs incurred by Cyprus in implementing the CSP work was approximately $30.9 million as of mid-January 2016 (inclusive of accrued prejudgment interest, and to be supplemented as of year-end 2017 prior to trial).

11. Whether Cyprus has produced evidence of relative waste generation capacity of the BZ Smelter and the TFM Smelter constituting a reliable proxy for the generation of air emissions and visible smelter waste by these operations, given that actual waste volumes generated by the two smelters were not contemporaneously recorded, supporting an assignment of responsibility for smelter impacts in Collinsville and surrounding areas of 50.87% to the BZ Smelter and 49.13% to the TFM Smelter.

12. Whether the refusal of TCI, CBS and/or Viacom to take action to address soil impacts and smelter waste at the TFM Smelter site and in the CSP was unreasonable, such that TCI should be treated as a recalcitrant PRP.

***Disputed Issues of Fact Identified by Defendant*:**

1. Whether any employee, officer, agent, or representative of TFMC (as the alter ego of NJZ) ever arranged for smelter materials to be transported off-site from the TFMC Smelter Site within the meaning of 42 U.S.C. § 9607(a)(3).

2. Whether any person acting solely as an employee, officer, agent, or representative of NJZ (acting independently from TFMC) ever arranged for smelter materials to be transported off-site from the TFMC Smelter Site within the meaning of 42 U.S.C. § 9607(a)(3).

3. Whether NJZ (acting independently from TFMC) owned any facility located within the Collinsville Town Site at the time hazardous materials were disposed of at such facility.

4. Whether NJZ (acting independently from TFMC) managed, directed, or conducted operations specifically related to pollution at the TFMC facility or the Collinsville Town Site.

5. Whether NJZ (acting independently from TFMC) managed, directed, or conducted operations having to do with the leakage or disposal of hazardous waste at the TFMC facility or the Collinsville Town Site.

6. Whether NJZ (acting independently from TFMC) directed day-to-day operations at the TFMC facility or made decisions specifically with regard to the smelter waste that is at issue in this case.

7. Whether TFMC (as the alter ego of NJZ) owned any facility located within the Collinsville Town Site at the time hazardous materials were disposed of at such facility.

8. Whether TFMC (as the alter ego of NJZ) managed, directed, or conducted operations specifically related to pollution at the Collinsville Town Site.

9. Whether TFMC (as the alter ego of NJZ) managed, directed, or conducted operations having to do with the leakage or disposal of hazardous waste at the Collinsville Town Site.

10. Whether, and to what extent, the costs for which Plaintiff seeks contribution from Defendant were attributable to the investigation and/or remediation of contamination alleged to have been caused by Smelter Air Emissions.

11. Whether, and to what extent, the costs for which Plaintiff seeks contribution from Defendant were attributable to the investigation and/or remediation of visible smelter waste alleged to have been transported from the TFMC Site prior to TFMC's dissolution as a corporation in 1926.

12. Whether, and to what extent, the costs for which Plaintiff seeks contribution from Defendant were attributable to the investigation and/or remediation of visible smelter waste alleged to have been transported from the TFMC Site after TFMC's dissolution as a corporation in 1926.

13. Whether, and to what extent, the costs for which Plaintiff seeks contribution from Defendant were attributable to the investigation and/or remediation of waste and/or metals that is not associated with smelter waste materials.

14. Whether the CSP addressed other sources of contamination, instead of impacts from smelter operations.

15. Whether the soil impacts attributable to smelter wastes and visible smelter materials addressed in the CSP are sourced from the BZ Smelter.

16. Whether the soil impacts attributable to smelter wastes and visible smelter materials addressed in the CSP are sourced from the TFM Smelter.

17. Whether the boundaries of the 48-square mile CSP were appropriately determined.

18. Whether any release of hazardous substances for which TCI may be held directly and/or indirectly liable caused Cyprus to incur response costs in excess of its equitable share.

19. The volume of smelter waste located on the TFM Smelter site after operations ceased in 1926.

*Note:* To the extent the Court may determine that any of the parties' foregoing disputed issues of fact are more properly characterized as disputed issues of law, the parties respectfully request that those issues be treated as if they were included as disputed issues of law in Section VII. above.

## VIII. TRIAL EXHIBITS AND STIPULATIONS AND OBJECTIONS AS TO ADMISSIBILITY.

Cyprus's and TCI's lists of trial exhibits were initially submitted to the Court on January 5, 2018 and were filed of record on January 8, 2018 (Dkt. Nos. 299 and 297, respectively). To the extent that the parties were able to agree to designate certain exhibits as joint trial exhibits, a list of same was also submitted to the Court on January 5, 2018 and separately filed of record on January 8, 2018 (Dkt. No. 300). The parties reserve the right to supplement and/or modify these trial exhibit lists prior to trial, including, but not limited to, supplementation of these lists with additional documents referenced in the parties' expert reports. Further, consistent with the Court's Order (Dkt. No. 290), any objections that the parties may have to the other party's trial exhibits will necessarily turn on the context within which a particular exhibit is offered at trial, and as such, the parties have agreed to reserve their rights to object to any exhibit offered by the other party at trial.

## IX.     WITNESSES TO BE CALLED AT TRIAL.

Cyprus's and TCI's witness lists were initially submitted to the Court on January 5, 2018 and were filed of record on January 8, 2018 (Dkt. Nos. 298 and 296, respectively). Cyprus expects to present the following fact and expert witnesses at trial:

| 1. | Amy Brittain, ODEQ |
|---|---|
| 2. | Roberto Gasparini, Spirit Environmental, LLC |
| 3. | A.J. Gravel, FTI Consulting, Inc. |
| 4. | Jeffrey Groy, CBS Operations, Inc. (*as on cross*) |
| 5. | Alicia Voss, Freeport McMoran Inc. |
| 6. | Richard L. White, Gnarus Advisors, LLC |
| 7. | Charles Janson, GHD Services, Inc. |

TCI expects to present the following fact and expert witnesses at trial:

| 1. | Jeffrey Groy, CBS Operations, Inc. |
|---|---|
| 2. | Jennifer Stevens, Ph.D., Stevens Historical Research Associates |
| 3. | David Keen, RTP Environmental Associates, Inc. |
| 4. | Jay Vandeven, Ramboll Environ US Corporation |

## X.      WITNESSES WHO MAY BE CALLED AT TRIAL FOR REBUTTAL OR OTHER PURPOSES IF THE NEED ARISES.

Cyprus may call the following witnesses at trial if the need arises:

| 1. | John Fenn, Cyprus corporate representative |
|---|---|
| 2. | Mark Gardiner, CB&I Government Solutions, Inc. |
| 3. | John Shonfelt, Arcadis U.S., Inc. |

| 4. | Charles Janson, GHD Services, Inc. |
|---|---|

In addition, Cyprus reserves the right to call the following witnesses at trial: witnesses necessary for authentication of exhibits; witnesses necessary for rebuttal or impeachment; witnesses, including but not limited to Cyprus's counsel, as may be necessary to establish legal fees and costs incurred by Cyprus; and any other person who, in the interests of justice, should be called as a witness to testify at trial in this matter.

TCI may call the following witnesses at trial if the need arises:

| 1. | Marna Salimena, Assistant General Counsel, Comcast Cable |
|---|---|
| 2. | Amy Brittain, ODEQ |
| 3. | John Shonfelt, Arcadis |
| 4. | Mark Gardiner, CB&I – Shaw |

In addition, TCI reserves the right to call the following witnesses at trial: witnesses necessary for authentication of exhibits; witnesses necessary for rebuttal or impeachment; and any other person who, in the interests of justice, should be called as a witness to testify at trial in this matter.

**XI.   SUMMARY OF SETTLEMENT EFFORTS.**

Multiple settlement mediation efforts facilitated by a Magistrate Judge have not been successful, and there does not appear to be any realistic possibility of settlement at this stage.

**XII.   The foregoing admissions having been made by the parties and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.**

### XIII. ESTIMATED TRIAL DAYS.

The parties anticipate the estimated total trial time to be 8-10 days.

**IT IS SO ORDERED** this 11th day of January, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

BY: */s/ Mark D. Coldiron (with permission)*
Mark D. Coldiron, OBA #1774
Paula M. Jantzen, OBA #20464
RYAN WHALEY COLDIRON JANTZEN PETERS & WEBBER
119 North Robinson, Suite 900
Oklahoma City, Oklahoma 73102
(405) 239-6040 Telephone
(405) 239-6766 Facsimile
mcoldiron@ryanwhaley.com
pjantzen@ryanwhaley.com

Paul D. Steinman (Admitted *pro hac vice*)
ECKERT SEAMANS CHERIN & MELLOTT LLC
U. S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
(412) 566-6000 Telephone
(412) 566-6099 Facsimile
psteinman@eckertseamans.com

*Counsel for Defendant*
*TCI Pacific Communications, Inc.*

-and –

BY: */s/ John F. Stoviak*
Reid E. Robison, OBA No. 7692
Timothy J. Bomhoff, OBA No. 13172
*McAfee & Taft A Professional Corporation*
211 N. Robinson, Suite 1000
Two Leadership Square, 10th Floor
Oklahoma City, OK 73102

John F. Stoviak (Admitted *pro hac vice*)
Cathleen M. Devlin (Admitted *pro hac vice*)
*Saul Ewing Arnstein & Lehr LLP*
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Telephone: 215-972-1095

*Attorneys for Plaintiff*
*Cyprus Amax Minerals Company*