UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYPRUS AMAX MINERALS COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0252-CVE-CDL |
| | ) |
| TCI PACIFIC COMMUNICATIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion to Amend Findings of Fact pursuant to Fed. R. Civ. P. 52(b) (Dkt. # 337). Defendant TCI Pacific Communications, LLC (TCI) asks the Court to amend the findings of fact and conclusions of law (Dkt. # 332) to include additional findings concerning direct operator liability under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. (CERCLA). Plaintiff Cyprus Amax Minerals Company (Cyprus) responds that the Court had no reason to decide this issue and the Court did not fail to resolve an essential issue that requires additional findings of fact. Dkt. # 349.

Cyprus filed this case seeking contribution from TCI under CERCLA, and Cyprus alleged that TCI could be held liable as a former owner or operator of the Tulsa Fuel and Management Company's (TFMC) zinc smelter located in Collinsville, Oklahoma. TFMC was a subsidiary of the New Jersey Zinc Company (NJZ), and TCI is the corporate successor to NJZ. The amended complaint contains the following allegations concerning NJZ's alleged control over TFMC:

> 12. At all relevant times, TFMC was dominated and controlled by, was operated for the benefit of, and was the "alter ego" of, [NJZ], a corporation organized under the laws of the State of New Jersey. As a result of this domination and

> control of TFMC, [NJZ] was the "alter ego" of TFMC, and as such, is liable for all liabilities of TFMC.
>
> 13. Also at all relevant times, [NJZ] directly participated in, managed, controlled and directed the workings of and conducted the operations of the TFM Smelter, and as such, is liable for all liabilities arising from the operations of the TFM Smelter.

Dkt. # 106, at 4. The Court directed the parties to file motions for summary judgment "on the issue of TFMC's and [NJZ's] corporate relationship, including any arguments as to piercing the corporate veil." Dkt. # 145, at 20. Cyprus' and TCI's motions (Dkt. ## 151, 161) focused primarily on whether TFMC was the alter ego of NJZ, but the motions briefly raised the issue of whether NJZ directly operated TFMC's smelter. The Court entered an opinion and order (Dkt. # 183) finding that NJZ disregarded the corporate separateness of TFMC, and TCI could be subject to CERCLA liability "under a theory of indirect liability." Dkt. # 183, at 30. The Court did not consider the parties' arguments concerning TCI's direct operator liability based on a theory that NJZ directly controlled the operations of TFMC's smelter.

The parties subsequently filed motions for summary judgment as to the elements of Cyprus' claims for contribution under CERCLA, and Cyprus argued that TCI was a "covered person" based on the Court's ruling that TCI could be held indirectly liable under CERCLA. Dkt. # 213, at 5, 25. TCI argued that Cyprus failed to establish a claim for direct operator liability under a theory that NJZ actually controlled TFMC's operations and the disposal of hazardous substances at the TFMC smelter. Dkt. # 216, at 36-37. Cyprus responded that TCI could held liable on a theory of direct operator liability based on the same facts used by the Court to establish indirect liability. Dkt. # 227, at 42-43. However, the parties did not offer new evidence on the issue of NJZ's control over the operations of the TFMC smelter, and any ruling on this issue would have been based on the summary

judgment record from the prior opinion and order (Dkt. # 183). The Court focused on the elements of CERLCA liability and did not consider direct operator liability as an additional basis to hold TCI liable for the disposal of hazardous substances at the TFMC smelter. Dkt. # 244. The Court noted that TCI was making arguments that it did not own or operate the TFMC smelter, but these arguments appeared to be a request for reconsideration of the Court's prior opinion and order (Dkt. # 183). Dkt. # 244, at 31. The Court noted the difference between indirect and direct liability under CERCLA and declined to make a finding as to direct liability, because the Court's prior finding as to indirect liability independently permitted Cyprus to proceed with its contribution claims against TCE. Id. at 32.

The case was set for a non-jury trial and the Court entered a pretrial order (Dkt. # 302). Cyprus stated in the pretrial order that it believed the Court had fully resolved the issue of whether TCI was a covered person, and it did not request a ruling that TCI was directly liable under CERCLA. Dkt. # 302, at 5. TCI did not agree that this issue was resolved and it generally asked the Court to find that it could not be held liable as a former owner or operator under CERCLA. Id. at 7. TCI also claimed that there were disputed issues of fact concerning its ownership, management, or operation of a facility within the town of Collinsville. Id. at 12. The Court held a non-jury trial, which TCI moved for judgment as a matter of law on several issues, including whether TCI could be held directly liable under CERCLA. Dkt. # 319, at 11-12. Cyprus advised the Court that it was not seeking a ruling on this issue, and Cyprus believed that the Court's prior ruling concerning alter ego liability was sufficient to establish that TCI is a "covered person" under CERCLA. Id. at 13. The Court entered its findings of fact and conclusions of law (Dkt. # 332), relying on its prior opinion and order to establish that TCI was indirectly liable under an alter ego theory, and the Court

3

did not reach the issue of whether TCI could be held directly liable under CERCLA. Dkt. # 332, at 16.

Under Fed. R. Civ. P. 52(a), a court must make findings of fact and conclusions of law in an action tried without a jury. Upon motion by any party, a court may "amend its findings–or make additional findings–and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Rule 52(b) permits a district court to "correct manifest errors of law or fact, make additional findings or take other action that is in the interests of justice." Ashraf-Hassan v. Embassy of France, 185 F. Supp.3d 94, 108 (D.D.C. 2016). A Rule 52(b) motion to amend findings of fact and conclusions of law should be granted only if the proposed additional findings would be material to district court's ruling. Lyons v. Jefferson Bank & Trust, 793 F.Supp. 989, 991 (D. Colo. 1992). "Such a motion should not be employed, however, 'to introduce new evidence that was available at the time of trial but was not proffered, to advance new theories, or to secure a rehearing on the merits.'" Deem v. Baron, 2020 WL 4437297, *1 (D. Utah Aug. 3, 2020) (quoting Lyons, 793 F. Supp. at 991).

In United States v. Bestfoods, 524 U.S. 51 (1998), the Supreme Court considered the circumstances under which a parent corporation could be held liable for the disposal of hazardous substances by a subsidiary company. The mere fact that a subsidiary owns or operates a polluting facility is not a sufficient basis to impose liability on the parent company, and the well-settled principle of piercing the corporate veil applies to CERCLA claims. Id. at 62-63. State corporation law was not displaced by CERCLA, and a parent company can be subject to derivative or indirect liability under a veil-piercing theory. Id. at 63. However, CERCLA provides a separate basis to hold a parent company liable as the owner or operator of a polluting facility. Any party, including a parent corporation, may be liable as an "operator" under CERCLA if it manages, directs, or conducts

operations related to pollution or the disposal of a hazardous substance. Id. 66-67. In making this inquiry, a court must take into account the general presumption that an officer or director can wear "two hats," and courts should not disregard the "time-honored" rule that dual officers or directors of parent and subsidiary companies can act in separate capacities. Id. at 70. Instead, a court must distinguish between normal acts of interference by a parent company and acts that are "eccentric under accepted norms of parental oversight of a subsidiary's facility." Id. at 71-72. A court need not find that a parent company is liable under theories of direct and indirect liability, and these are separate and independent bases to hold a parent company liable for pollution at a subsidiary's facility. New Mexico on behalf of New Mexico Environmental Department v. United States Environmental Protection Agency, 310 F. Supp. 3d 1230, 1244 (D.N.M. 2020); United States v. Friedland, 173 F. Supp. 2d 1077 (D. Colo. 2001).

      The Court finds that the issue of TCI's direct operator liability under CERCLA was not an issue that was required to be resolved at the non-jury trial and there is no need for the Court to issue amended findings of fact and conclusions of law. The Supreme Court was clear in Bestfoods that direct and indirect liability of a parent company are separate and independent bases for liability, and the Court's finding that TCI is indirectly liable under an alter ego theory is sufficient to resolve Cyprus' CERCLA claims. In its reply, TCI accuses Cyprus of engaging in a "last-ditch effort to revive its failed claim of direct operator liability against TCI . . ." Dkt. # 353, at 1. To the contrary, Cyprus expressly asks the Court not to make additional findings on the issue of direct operator liability, and this is consistent with the position taken by Cyprus in its closing argument at trial. Dkt. # 319, at 13 (Cyprus' counsel argued that the Court's prior ruling on alter ego liability satisfied the element of Cyprus' CERCLA claim and asking the Court not to consider direct operator liability in

its findings of fact and conclusions of law); Dkt. # 349, at 7-8 ("once this Court decided that CERCLA liability could be imposed based on an indirect operator theory, there was no need for the Court to further consider or rule on Cyprus' alternative argument as to NJZ's direct operator liability under CERCLA as part of its post-trial Findings of Fact and Conclusions of Law"). TCI argues that the issue of direct operator liability was "disputed" by the parties and, therefore, should have been resolved by the Court in its findings of fact and conclusions of law. However, the Court relied on the parties' arguments and the evidence offered at trial to determine which issues were necessary and material to the Court's ruling on Cyprus' CERCLA claims. Cyprus was not seeking a ruling on this issue and it was not material to the disposition of the case, and the Court was not required to resolve every possible "disputed" issue that could arise at trial. TCI has not shown that the Court failed to make findings on a material issue in it findings of fact and conclusions of law (Dkt. # 332), and TCI's motion pursuant to Rule 52(b) (Dkt. # 337) is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Amend Findings of Fact pursuant to Fed. R. Civ. P. 52(b) (Dkt. # 337) is **denied**.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals in reference to Appeal No. 21-5038.

**DATED** this 14th day of June, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE